**Fidelis OSUCHUKWU, Petitioner,**

**v.**

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**No. 83–4686.**

United States Court of Appeals,
Fifth Circuit.

Oct. 26, 1984.

---

Harry J. Joe, Steve Ladik, Dallas, Tex., for petitioner.

Robert L. Bombaugh, Director, Civil Div., Hillary B. Burchuk, Charles E. Hamilton, III, Joseph F. Ciolino, Civil Div., Justice Dept., Washington, D.C., for respondent.

David H. Lambert, Dist. Dir., I.N.S., New Orleans, La., William J. Chambers, Dist. Dir., I.N.S., Dallas, Tex., for other interested parties.

Before RUBIN, REAVLEY, and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The sluggishness of immigration and judicial procedures makes it inevitable that changes in the lives of the people affected will occur while these processes move slowly along. An alien who was ordered deported four years ago when his citizen wife was expecting their first child seeks to avoid return to his native country on the ground that deportation would cause extreme hardship to his wife, the child, and to another child whom his wife was expecting by the time we heard the appeal. Finding that the immigrant's wife and son would not suffer extreme hardship on the basis of the record made in 1980, the Board of Immigration Appeals denied his request for relief from deportation. Limited by the considerable authority granted to the Attorney General, which permits us to review such actions only for abuse of discretion, and by the record, we refuse to reverse the Board's finding, but express no opinion concerning the possible reopening of the record in response to a motion based on the existence of evidence not then available.

## I.

Fidelis Osuchukwu entered the United States in 1975 as a student. On the basis of his marriage in 1976 to Pamela Ladd, a citizen, he was accorded lawful permanent resident status in 1977. In 1979, Osuchukwu was convicted of theft in a Texas court and sentenced to two years imprisonment. He was released from confinement under the state sentence in May, 1980. In August, 1980, he was convicted by a federal court of making a false statement in an application for a checking account and of mail fraud. The imposition of sentence was suspended, and he was placed on probation for three years. He was discharged from probation, however, in July, 1981. Shortly after his federal conviction, Osuchukwu was ordered to show cause why he should not be deported under § 241(a)(4) of the Immigration and Naturalization Act because he had been convicted of a crime involving moral turpitude.[1]

The deportation hearing was commenced on November 18, 1979, and then recessed to permit Osuchukwu to retain counsel. It was resumed more than a year later, on December 12, 1980, with Osuchukwu represented by West Texas Legal Services.

Even though Osuchukwu's lawyer questioned whether the two crimes arose out of separate schemes of criminal misconduct so as to satisfy the requirements of § 241(a)(4),[2] she ultimately admitted the two crimes and conceded deportability. She then sought a waiver of inadmissibility on the basis of extreme hardship under § 212(h) of the Act.[3] Immediately after the hearing, the Immigration Judge, on the basis of these admissions, found Osuchukwu deportable and denied the waiver of inadmissibility.

Osuchukwu, then represented by retained counsel, Wallace Heitmann, appealed to the Board of Immigration Appeals, arguing that the Immigration Judge had failed to give proper weight to the extreme hardship that would befall his citizen wife and child and by failing to consider all relevant factors in favor of his good character and rehabilitation. Osuchukwu also alleged that his wife, at the time of appeal, was nearing the end of a new pregnancy.[4] The Board of Immigration Appeals' denial of the appeal was not rendered until March 7, 1983, but the record shows no reason for the delay.[5]

---

**1.** 8 U.S.C. § 1251(a)(4). That provision reads, in pertinent part, as follows:

(a) Any alien in the United States ... shall, upon order of the Attorney General, be deported who—

(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison ... for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor....

**2.** *See supra* note 1. On appeal, we do not know the relationship of the two offenses.

**3.** 8 U.S.C. § 1182(h). Section 1182(h) reads, in pertinent part, as follows:

Any alien, who is excludable from the United States under paragraph[ ] (9) ... of subsection (a) of this section, who (A) is the spouse or child of a United States citizen ... or (B) has a son or daughter who is a United States citizen ... shall, if otherwise admissible, be issued a visa and be admitted to the United States for permanent residence (1) if it shall be established to the satisfaction of the Attor-

ney General that (A) the alien's exclusion would result in extreme hardship to the United States citizen ... spouse, parent, or son or daughter of such alien, and (B) the admission to the United States of such alien would not be contrary to the national welfare, safety, or security of the United States; and (2) if the Attorney General, in his discretion, ... has consented to the alien's applying for or reapplying for a visa and for admission to the United States.

**4.** Attached to the brief in support of the appeal was a doctor's certificate that Mrs. Osuchukwu was pregnant and her expected date of delivery was January 10, 1982; a letter stating that Osuchukwu was enrolled as a "full-time student" in Mountain View College "carrying 5 hours in the Aviation Maintenance Technology program"; a letter from Terminal Taxicab Company, Inc. stating that Osuchukwu is employed by that firm as a taxi driver; and a letter from the Pastor of the Rising Star Church of God stating, "He said he would place his membership here."

**5.** The record does not indicate when the transcript was completed or when briefs were filed. Counsel for Osuchukwu attributes considerable

The Board found that deportation would not cause extreme hardship to Osuchukwu's wife and child: "We do not find that this wife, who is a native born citizen, fluent in English and apparently healthy, will be unable to support herself and her child." In response to the argument relating to extreme emotional hardship, the Board stated, "We believe that they [his wife's immediate family] may assist her and the child emotionally and otherwise, upon the Respondent's departure from the United States." The Board, therefore, found it unnecessary to reach the issue whether the waiver was contrary to national welfare, safety, or security, the second factor to be considered for a § 212(h) waiver.

Represented by yet another lawyer, Osuchukwu filed a motion to reconsider with the Board and attached xerox copies of articles discussing the psychological effect on young boys of separation from their fathers. The motion represents that Mrs. Osuchukwu is working for a cleaning service. It does not recite her earnings but refers to a Bureau of Labor Statistics Study made in December 1981 showing that the average wage of a woman thus employed is $3.86 an hour and data concerning the cost of child care. No representation is made concerning Osuchukwu's earnings, his contributions to his family, personal or financial, or why Mrs. Osuchukwu is working. In his argument to us Osuchukwu recited that his wife was expecting a second child, who was due in August, 1984. We are not informed of the result of the 1972 pregnancy.

The motion to reconsider offered no other new evidence but relied upon the Board's alleged "failure to meaningfully address and reach a reasoned conclusion"

on Osuchukwu's specific assertions of extreme hardship to his wife and child. Restating its previous conclusions in light of the evidence presented, the Board denied the motion on October 27, 1983. On appeal, Osuchukwu contends that the Board abused its discretion in denying his request for relief from deportation under § 212(h) by failing to meaningfully consider all of the issues raised by him and by applying an incorrect legal standard in its determination of extreme hardship. While Osuchukwu does not contend that we should apply any standard other than "abuse of discretion," the applicability of that standard is not self evident and its scope is not clearly defined. We, therefore, first consider those matters.

## II.

Our review of the Board's denial of the motion to reconsider and its determination that the hardship to Osuchukwu's spouse and child does not satisfy 8 U.S.C. § 1182(h) is limited by the broad discretion accorded to the Attorney General and the Board of Immigration Appeals as his delegate. Under § 212(h), the Attorney General, in his discretion, may grant a waiver of inadmissibility if he determines that (1) deportation would result in extreme hardship to the alien's citizen spouse or child, and (2) the waiver would not be contrary to the national welfare, safety, or security of the United States.[6] Although § 212(h) speaks to the admission of an alien, the Board has determined that it is also available to an alien present in the United States who applies for adjustment of status under § 245 of the Act.[7]

Like § 244(a)(1),[8] which authorizes suspension of deportation, § 212(h) authorizes

---

delay to the failure of the Service to complete a transcript. Counsel for the government attributes some of the delay to late briefing by Osuchukwu or the possibility that "the case fell between the cracks."

6. 8 U.S.C. § 1182(h). *See supra* note 3.

7. 8 U.S.C. § 1255. *See Matter of Bernabella,* 13 I & N Dec. 42 (BIA 1968).

8. 8 U.S.C. § 1254(a)(1). That provision reads, in pertinent part, as follows:

(a) ... [T]he Attorney General may, in his discretion, suspend the deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States ...; has been physically present in

the Attorney General, in his discretion, to grant relief from deportation upon a showing of "extreme hardship." The latter section looks only to the hardship to the citizen spouse and child, whereas the former also looks to the hardship to the alien.[9] In interpreting § 244(a)(1), the Supreme Court has considered the scope of the discretion given the Attorney General and his delegates [10] to define the term "extreme hardship" and to determine when that plight exists. We have no reason to define the scope of discretion under § 212(h) differently.

In its discussion of "extreme hardship" in *INS v. Wang*,[11] the Court stated, "These words are not self-explanatory, and reasonable men could easily differ as to their construction." But it continued, "[T]he Act commits their definition in the first instance to the Attorney General and his delegates, and their construction and application of this standard should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute."[12]

The Board had "considered it well settled that a mere showing of economic detriment was insufficient to satisfy the requirements of § 244." [13] While the Court noted that the Board also found no serious economic detriment, it found that "in making these determinations the Board was acting within its authority." [14] The Attorney General and its delegates, it said, "have the authority to construe 'extreme hardship' narrowly should they deem it wise to do so. Such a narrow interpretation is consistent with the 'extreme hardship' language, which itself indicates the exceptional nature of the suspension remedy." [15] Our power to review the hardship determination under § 244(a), therefore, is straitened by the statute. We are to determine only whether the agency has abused the discretion imparted to it by Congress.[16]

We recently described this review as "most restricted." [17] This standard accords greater freedom from judicial review to the agency than is granted by the seventh amendment to the verdict of a jury, whose conduct we may overturn if not supported by substantial evidence,[18] and far

---

the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien, or to his spouse, parent, or child, who is a citizen of the United States
. . . .

9. *See supra* notes 3 & 8.

10. The Attorney General is authorized to delegate his powers under the Act, 8 U.S.C. § 1103, and his authority to suspend the deportation of an alien under § 244(a)(1) has been delegated by regulation to specified authorities in the Immigration and Naturalization Service. 8 C.F.R. § 2.1 (1984). Section 2.1 of the regulations delegates the Attorney General's power to the Commissioner of Immigration and Naturalization, and permits the Commissioner to redelegate the authority through appropriate regulations. The power to consider § 244 applications in deportation hearings is delegated to special inquiry officers, whose decisions are subject to review by the Board of Immigration Appeals, 8 C.F.R. §§ 242.8, 242.21 (1984). *See Bastidas v. INS*, 609 F.2d 101, 103 n. 1 (3d Cir.1979). The Board of Immigration Appeals has the power to consider the question if it is raised on a motion to

reopen where the Board has already made a decision in the case. 8 C.F.R. § 3.2 (1984).

11. 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981).

12. 450 U.S. at 144, 101 S.Ct. at 1031, 67 L.Ed.2d at 129.

13. 450 U.S. at 144, 101 S.Ct. at 1031, 67 L.Ed.2d at 129.

14. 450 U.S. at 145, 101 S.Ct. at 1031, 67 L.Ed.2d at 130.

15. 450 U.S. at 145, 101 S.Ct. at 1031, 67 L.Ed.2d at 130.

16. 540 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981).

17. *Zamora-Garcia v. United States Dept. of Justice INS*, 737 F.2d 488, 490 (5th Cir.1984) (quoting *Ramos v. Immigration and Naturalization Service*, 695 F.2d 181, 185 (5th Cir.1983)).

18. *Solis v. Rio Grande City Independent School*, 734 F.2d 243 (5th Cir.1984); *Stewart v. Thigpen*, 730 F.2d 1002 (5th Cir.1984); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236 (5th Cir.1983); *Wood*

greater latitude for unreviewable judgment than is accorded to the fact findings of a trial judge, whose determination may not be overturned if not clearly erroneous.[19]

To recite that we are not to substitute our judgment for the Board's is a bromide. The standard sets the level of conviction that we must feel before deciding that the Board was wrong and we are right. Although we may review the denial of an extreme hardship finding "procedurally" to ensure that the alien has received full and fair consideration of all circumstances that occasion the claim,[20] and may find an abuse of discretion if the Board utterly failed or refused to consider relevant hardship factors, we lack the authority to determine the weight, if any, to be afforded each factor.[21]

■ The scope of review is also constricted by the procedural posture of this case, since Osuchukwu has not appealed on the merits but from the Board's denial of his motion to reconsider. The applicable regulation requires that "[m]otions to reconsider shall state the reasons upon which the motion is based and shall be supported by such precedent decisions as are pertinent."[22] Although we have not specifically discussed the standard of review for the denial of such a motion, we have often held that the abuse of discretion standard is appropriate when a denial of a motion to reopen[23] is appealed.[24] In construing the language of the regulation, the Ninth Circuit has concluded that "the motion to reconsider appears generally to be used to 'question[ ] the Board's decision for alleged errors in appraising the facts and the law,' "[25] and has determined that a denial of a motion to reconsider, like denial of a motion to reopen is subject only to review for abuse of discretion.[26]

We find the approach of the Ninth Circuit persuasive, especially when, as in the present case, the motion asks for reconsideration of a matter within the broad discretion of the Attorney General and his delegates. We, therefore, apply the abuse-of-discretion standard and construe that standard to limit us stringently before permitting us to find that the Board did not act within its authority.

### III.

In his argument that the Board abused its discretion by denying the motion to reconsider, Osuchukwu contends that, on the record before the Board, the Board did not apply the proper legal standards to evaluation of the claim of extreme hardship as set forth by us in *Ramos v. INS.*[27] This is buttressed by the contention that the Board evidenced "bureaucratic ignorance," "callousness," and "lack of compassion" in failing to determine on the facts before it

v. Diamond M Drilling Co., 691 F.2d 1165 (5th Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 947 (1983).

**19.** Fed.R.Civ.P. 52(a).

**20.** *Zamora-Garcia v. INS,* 737 F.2d 488, 490 (5th Cir.1984); *see also Ramos v. INS,* 695 F.2d 181, 186 (5th Cir.1983).

**21.** *Zamora-Garcia,* 737 F.2d at 493 (and cases cited therein). *But see Contreras-Buenfil v. INS,* 712 F.2d 401 (9th Cir.1983), which we refused to follow in *Zamora-Garcia,* 737 F.2d at 493.

**22.** 8 C.F.R. 3.8 (1984).

**23.** *See* 8 C.F.R. 3.8 (1984).

**24.** *See, e.g., Marcello v. INS,* 694 F.2d 1033 (5th Cir.) (holding that denial of motion to reopen was not an abuse of discretion), *cert. denied,* — U.S. —, 103 S.Ct. 3112, 77 L.Ed.2d 1367

(1983); *Ka Fung Chang v. INS,* 634 F.2d 248 (5th Cir.1981) (holding that denial of motion to reopen is subject to review for abuse of discretion, unless denial rests on determination of statutory ineligibility, in which case it is subject to review for errors of law); *Vasquez-Contreras v. INS,* 582 F.2d 334 (5th Cir.1978) (holding that review of denial of motion to reopen is limited to abuse of discretion standard); *Faddah v. INS,* 553 F.2d 491 (5th Cir.1977) (same).

**25.** *Sanchez v. INS,* 707 F.2d 1523 (9th Cir.1983) (quoting 1 Gordon and Rosenfield, Immigration Law and Procedure § 1.10g, at 1–81).

**26.** *Chudshedvid v. INS,* 641 F.2d 780, 784 (9th Cir.1981); *see also Velasquez Espinosa v. INS,* 404 F.2d 544, 546 (9th Cir.1968) (holding that review of denial of motion to reopen and reconsider is limited to the abuse of discretion standard).

**27.** 695 F.2d 181 (5th Cir.1983).

that Osuchukwu's deportation would cause extreme hardship to his wife and child. Osuchukwu's motion did not, however, ask the Board to reopen the case for additional evidence.

At the time of his appeal to the Board, Osuchukwu was 30 years old and his son was one. The Board found that Mrs. Osuchukwu was employable and that Osuchukwu could obtain employment in his native country after deportation and thus assist her. It also found that the child would not suffer extreme emotional hardship as a result of separation from his father because the child was so young and would receive care and emotional support from his maternal family. It therefore found it unnecessary to reach the question of national security and whether Osuchukwu had established his rehabilitation, but it did consider every issue raised by Osuchukwu.

■ Were we fact-finders, we would not share the Board's sanguine view of Mrs. Osuchukwu's ability to support a child or of Osuchukwu's ability to secure employment in Nigeria so remunerative that he could not only support himself but could also remit funds to his far-away family. We would not equate maternal family support with paternal relationship. But we are not permitted to review the Board's opinion for the sufficiency of record support or even for clear error. The standard is whether the Board has acted within the bounds of an abundant discretion granted it by Congress. It is our duty to allow decision to be made by the Attorney General's delegate, even a decision that we deem in error, so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary rather than the result of any perceptible rational approach. As Judge Henry Friendly has made clear in

his article, *Indiscretion About Discretion,*[28] "abuse of discretion" is a variable standard, and the latitude it affords the initial decision-maker depends on the reasons why that type of decision is committed to the fact-trier's discretion in the first instance.[29] The breadth given the Attorney General and his delegate by § 244 and § 212(h) is generous, not to be confined by crabbed judicial review.

The Board has held that separation of a child from his alien parent is not per se extreme hardship and this conclusion has received judicial support.[30] Moreover, "[i]t is well established ... that economic hardship alone does not mandate the granting of relief to an otherwise deportable alien."[31] Even when all of these problems are created for a single family their combined effect is not necessarily conclusive that the statutory standard is met.

As the Board pointed out, no evidence was presented to it to show the nature of Osuchukwu's personal relationship with his son or his wife, other than his wife's testimony at the hearing that the marriage was stable. No evidence was presented to it to show the extent of his financial contribution to his family's support. Indeed, the only post-hearing evidence proffered in support of Osuchukwu's family contribution is that he had become employed as a taxi driver, a fact that, even if proved, would not demonstrate the extent either of his earnings or of his contributions to his family's sustenance.

■ The Board has meaningfully addressed Osuchukwu's specific assertions of hardship, as required by *Ramos.* It has no duty to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its

**28.** 31 Emory L.J. 747 (1982).

**29.** *Id.* at 764 (quoting *United States v. Criden,* 648 F.2d 814, 817 (3d Cir.1981) (Sloviter, J.)).

**30.** *See United States v. Esperdy,* 367 F.2d 861 (2d Cir.1966); *see also Amezquita-Soto v. INS,* 708 F.2d 898, 902–04 (3d Cir.1983); *Balani v. INS,* 669 F.2d 1157, 1162 n. 5 (6th Cir.1982).

**31.** *Men Keng Chang v. Jiugni,* 669 F.2d 275, 279 (5th Cir.1982); *see also INS v. Wang,* 450 U.S. at 142, 101 S.Ct. at 1030–31, 67 L.Ed.2d at 128; *Aguilar v. INS,* 638 F.2d 717, 719 (5th Cir.1982); *Chokloikaew v. INS,* 601 F.2d 216, 218 (5th Cir. 1979).

decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.

As we have indicated, Osuchukwu has never filed a motion to reopen the record to present evidence concerning all that has happened since December, 1980. We do not know whether Osuchukwu is working or not, what his relationship with his family is, whether he and his wife have one or two children, whether he is supporting his family financially or emotionally, or even whether he is living with it.

An alien may move to reopen deportation proceedings to seek discretionary relief if circumstances have changed after a deportation order was entered.[32] The Board may not grant such a motion unless it is based upon material new facts.[33] The burden of making a prima facie case of hardship is on the alien.[34] We do not here assess whether the evidence sought to be presented to us would suffice to warrant the Board in reopening proceedings or would make refusal to do so an abuse of the discretion granted the Board in determining whether or not to grant such a motion.[35]

We judge the case, as we must, on the record presented to the Board and the limited standard of review. Based on that record, we find no abuse of its considerable discretion.

Petition for review DENIED.

---

**32.** *Urbano de Malaluan v. INS,* 577 F.2d 589, 592 (9th Cir.1978); *cf. Marcello v. INS,* 694 F.2d 1033, 1035 (5th Cir.), *cert. denied,* — U.S. —, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983).

**33.** 8 C.F.R. 3.2 (1984).

**34.** *Balani v. INS,* 669 F.2d 1157, 1160 (6th Cir. 1982); *see also Marcello v. INS,* 694 F.2d 1033, 1035 (5th Cir.), *cert. denied,* — U.S. —, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983).

**35.** *Balani v. INS,* 669 F.2d at 1161.