**Maria Miriam TURRI, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION**
**SERVICE, Respondent.**

No. 91–9525.

United States Court of Appeals,
Tenth Circuit.

Filed July 9, 1993.

Daniel M. Kowalski, Denver, CO, for petitioner.

Stuart M. Gerson, Asst. Atty. Gen., Civil Div., Robert Kendall, Jr., Asst. Director, Office of Immigration Litigation, Civil Div., Anne C. Arries, Atty., U.S. Dept. of Justice, Office of Immigration Litigation, Civil Div., Washington, DC, for respondent.

Before MOORE and BRORBY, Circuit Judges, and VAN BEBBER,* District Judge.

PER CURIAM.

Petitioner seeks review of two decisions of the Board of Immigration Appeals,[1] the first

* Honorable G. Thomas Van Bebber, District Judge, United States District Court for the District of Kansas, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition for review. *See*

of which found petitioner deportable and denied her request for a suspension of deportation pursuant to 8 U.S.C. § 1254(a) on the ground that she had not established she would suffer "extreme hardship" if deported. The second decision denied petitioner's motions to reopen the proceedings and to reconsider her request for suspension of deportation. We have jurisdiction to review the Board's decisions under 8 U.S.C. § 1105a, and we reverse and remand for further consideration.

## I.

Petitioner came to the United States from Italy in 1976 at the age of twenty-seven on a nonimmigrant student visa to pursue graduate work. In connection with her studies at the University of Denver Graduate School of Social Work, petitioner was instrumental in establishing and running the Denver branch of an international program that brings people to the United States to work and observe American techniques, mostly in the social sciences.

Although she has remained in the United States solely on the basis of her student visas, petitioner has not pursued any studies since December of 1986. Instead, she has continued her work with the international program and has developed a thriving freelance business teaching Italian language and culture courses, translating documents, and assisting business people seeking to enter markets in Italy. Petitioner is highly regarded in the Denver community, as evidenced by the 105 people who attended her deportation hearing and the many people who submitted letters or affidavits in support of petitioner's application for suspension and her motions to reconsider and to reopen. Although petitioner's business has been profitable and well received by the community, it has not been sanctioned by the INS.

In 1989, petitioner essentially turned herself in to the INS in the hopes that she could obtain a suspension from deportation, the only avenue she believed available to secure

more permanent residence in the United States. The Attorney General has discretion, under 8 U.S.C. § 1254(a)(1), to suspend the deportation of an otherwise deportable alien who has been physically present in the United States for at least seven years, has been a person of good moral character during those seven years, and "is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." At issue in this case is whether petitioner's deportation would result in extreme hardship to her, as petitioner has no family in the United States.

## II.

Petitioner has the burden of proving her eligibility for suspension of deportation. *See Hernandez–Cordero v. United States INS*, 819 F.2d 558, 560 (5th Cir.1987) (en banc). The first two requirements, seven years' continuous residence and good moral character, are factual questions that we review for substantial evidence. *Id.; Amezquita–Soto v. INS*, 708 F.2d 898, 902 (3d Cir. 1983). These requirements are not at issue here. The third requirement, that deportation would result in extreme hardship, is a discretionary matter that we review only for an abuse of discretion.[2] *Hernandez–Cordero*, 819 F.2d at 560; *Amezquita–Soto*, 708 F.2d at 902–03 & n. 11.

Our review of the Board's determination on extreme hardship is limited. *See Hernandez–Cordero*, 819 F.2d at 562 (" '[W]e doubt that there remains much, if any, scope for judicial *substantive* review, even under an "abuse of discretion" standard, of no "extreme hardship" determinations.' ") (quoting *Ramos v. INS*, 695 F.2d 181, 185 (5th Cir. 1983)). So long as the Board considers all the relevant factors, this court cannot second-guess the weight, if any, to be given any

---

Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. We reject petitioner's argument that whether she has established extreme hardship is a question of law subject to de novo review.

factor. *See, e.g., Sanchez v. United States INS,* 755 F.2d 1158, 1161 (5th Cir.1985).

Nonetheless, "we may still scrutinize the [Board's] decision for procedural regularity." *Hernandez–Cordero,* 819 F.2d at 563; *see also Ravancho v. INS,* 658 F.2d 169, 176 (3d Cir.1981). One of the procedural requirements this and other circuits have recognized is that the Board must *actually consider* all factors relevant to a particular alien's claim of hardship. *See Becerra–Jimenez v. INS,* 829 F.2d 996, 1000 (10th Cir.1987); *Carrete-Michel v. INS,* 749 F.2d 490, 493 (8th Cir. 1984); *Ravancho,* 658 F.2d at 175; *Santana–Figueroa v. INS,* 644 F.2d 1354, 1356 (9th Cir.1981); *cf. Diaz–Resendez v. INS,* 960 F.2d 493, 495 (5th Cir.1992) (application for waiver of deportation).

▉ No single factor is dispositive of extreme hardship; the Board must evaluate the cumulative effect of all the relevant factors in determining whether an alien has established extreme hardship. *See Hernandez–Cordero,* 819 F.2d at 563; *Bueno–Carrillo v. Landon,* 682 F.2d 143, 146 n. 3 (7th Cir.1982); *Ravancho,* 658 F.2d at 175; *Santana–Figueroa,* 644 F.2d at 1356. Failure to actually consider all the relevant factors constitutes an abuse of discretion. *See Ravancho,* 658 F.2d at 175; *Santana–Figueroa,* 644 F.2d at 1356; *cf. Diaz–Resendez,* 960 F.2d at 495 (application for waiver of deportation). Therefore, the Board must articulate its reasons for denying relief sufficiently for us, as the reviewing court, to be able to see that the Board considered all the relevant factors.

In her petition for review, petitioner asserts that the Board failed to actually consider all the evidence relating to her assistance to, and position in, the community; the difficulty of finding housing and employment in Italy; and the psychological trauma petitioner would suffer if she returned to Italy and her family in light of her history of being abused by her father and having problematic relations with her family. We agree that the Board did not sufficiently articulate its reasons for denying relief to establish that it actually considered all the relevant evidence.

III.

In its initial opinion denying petitioner's application for suspension, the Board stated:

In determining whether deportation will cause an alien to suffer extreme hardship, the following factors are taken into consideration: age of the subject; family ties in the United States and abroad; length of residence in the United States; condition of health; conditions in the country to which an alien is returnable, both economic and political; financial status, including business and occupation; the possibility of other means of adjustment of status; whether of special assistance to the United States or community; immigration history; and position in the community. *See Matter of Anderson,* 16 I & N Dec. 596 (BIA 1978).

R. at 363.

In the next paragraph, the Board said: "We have carefully reviewed the record in this case, and have concluded that all of the factors presented, considered in their entirety, do not constitute extreme hardship within the meaning of the Act." *Id.* Thereafter, the Board specifically discussed petitioner's ability to obtain employment in Italy and her problematic family relations, but never discussed whether petitioner was of special assistance to the community, her position in the community, or her financial status, including her business,[3] even though petitioner submitted extensive evidence relevant to these factors.

The circuits do not agree about what constitutes sufficient articulation of the Board's reasons for denying relief. *Compare Saldana v. INS,* 762 F.2d 824, 827 (9th Cir.1985) (holding that Board fails to show proper consideration of all relevant facts when it dismisses alien's claims with "conclusory or laconic statements"), *amended,* 785 F.2d 650 (9th Cir.1986), *and Zavala–Bonilla v. INS,* 730 F.2d 562, 568 (9th Cir.1984) (rejecting Board's "conclusory statement that it considered all factors [because the statement] fails

---

**3.** The only comment the Board made about petitioner's present business or occupation was that there would be little demand in Italy for someone who teaches Italian to English-speaking people. The Board also noted petitioner's advanced education and resourcefulness.

to delineate its reasoning adequately") *with Vergara–Molina v. INS,* 956 F.2d 682, 685 (7th Cir.1992) (concluding that Board's concentration on a single factor in last paragraph of opinion was reasonable because it was strongest factor for relief and Board's notation of other relevant factors elsewhere in its opinion established that Board actually considered those factors) *and Hernandez–Cordero,* 819 F.2d at 563 (quoting *Sanchez,* 755 F.2d at 1160, in an en banc opinion for the proposition that review " 'is limited to ascertaining whether *any* consideration has been given' by the [Board] to the factors establishing 'extreme hardship,' " and rejecting panel opinion that Board failed to analyze cumulative effect of individual claims of hardship given that Board "specifically stated that it 'considered all of the factors presented, both individually and cumulatively' "). *But see Diaz–Resendez,* 960 F.2d at 497 (stating in subsequent panel opinion that "[t]he Board must do more than just refer to relevant factors in passing").

In *Becerra–Jimenez v. INS,* 829 F.2d at 1000, we followed the general standards set forth in *Osuchukwu v. INS,* 744 F.2d 1136, 1143 (5th Cir.1984), and *Villanueva–Franco v. INS,* 802 F.2d 327, 330 (9th Cir.1986), in determining that the Board adequately articulated its reasons for finding the alien deportable and denying him voluntary departure.

In *Osuchukwu,* the court noted:

"It [BIA] has no duty to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."

744 F.2d at p. 1142–43.

Similarly, in *Villanueva–Franco,* the court, citing *Osuchukwu,* held:

"Villanueva's contention that the Board abused its discretion in failing to provide a reasoned basis for its decision finds no support in the record. The Board set out its reasons for denying relief: it concluded that the favorable equities did not outweigh the extensive criminal record. Although we have required the Board to provide more than '[m]ere conclusory statements', *Dragon v. INS* 748 F.2d 1304, 1306 (9th Cir.1984), all that is necessary is a decision that sets out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided. *See Osuchukwu v. INS,* 744 F.2d 1136, 1142–43 (5th Cir.1984)."

*Becerra–Jimenez,* 829 F.2d at 1000 (alterations in original).

Based upon our review of the record, we conclude the Board did not announce its decision in terms sufficient for us, as the reviewing court, to see that the Board "heard, considered, and decided" based on all the relevant factors. The Board and the courts have acknowledged that an alien's business and position in, and contributions to, the community are relevant to a claim of extreme hardship. *See Zamora–Garcia v. United States Dep't of Justice INS,* 737 F.2d 488, 495 (5th Cir.1984); *Santana–Figueroa,* 644 F.2d at 1357; *In re Anderson,* 16 I. & N. Dec. 596, 597–98 (1978); *In re Lum,* 11 I. & N. Dec. 295, 298 (1965). The record shows these factors were central to petitioner's claim of hardship. The Board, however, failed to address any of the voluminous evidence petitioner presented about her business and her position in, and contributions to, the community.

Because our scope of review does not extend far beyond determining whether any procedural irregularities existed in the Board's decisionmaking, if our review is to have any meaning, it must be based on the Board's own articulation of its reasons for denying relief, not on our assumptions about what the Board considered and decided. *See Ramos,* 695 F.2d at 188; *Ravancho,* 658 F.2d at 175. "To affirm on the theory that the Board necessarily considered whatever the petitioner asserted would free the Board of the obligation to articulate a reasoned basis for its decisions, eliminating any guaranty of rationality and foreclosing meaningful review for abuse of discretion." *Santana–Figueroa,* 644 F.2d at 1357.

Therefore, the Board's recitation of a laundry list of potentially relevant factors that included the alien's business, position in the

community, and contributions to the community, and its subsequent statement that it "carefully reviewed the record in this case, and ... concluded that all the factors presented, considered in their entirety, do not constitute extreme hardship within the meaning of the Act," R. at 363, are not sufficient to establish that the Board actually considered petitioner's business and her position in, and contributions to, the community. The Board abuses its discretion when it "distorts or disregards important aspects of the alien's claim." *Saldana*, 762 F.2d at 827. Because the Board did not articulate its reasons for denying petitioner's request for suspension of deportation sufficiently for us to see that it actually considered all the evidence relevant to petitioner's claim of extreme hardship, we must reverse the Board's decision and remand for further consideration.

## IV.

■ After the Board denied her application for suspension, petitioner filed motions to reconsider and to reopen,[4] which the Board also denied. Because we are reversing the Board's initial decision on petitioner's application for suspension of deportation, we need not address the Board's refusal to reconsider that decision. We will, however, address the Board's denial of petitioner's motion to reopen.

We review the denial of a motion to reopen under an abuse of discretion standard. *See Johnson v. INS*, 962 F.2d 574, 576–77 (7th Cir.1992). "Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 3.2. The Board, however, did not deny petitioner's motion to reopen on this basis. Instead, the Board ruled that petitioner's new evidence, when considered in conjunction with the evidence previously introduced,

did not establish a prima facie case of eligibility for suspension of deportation.

We have previously determined that the Board may not have adequately considered the evidence petitioner initially introduced in support of her application for deportation. Therefore, because the Board's ruling on the motion to reopen was based on its consideration of the earlier evidence, we must also reverse that ruling. After the Board fully considers all the evidence previously introduced, it should reevaluate the combined effect of the new evidence and the previous evidence on petitioner's claim of extreme hardship. *See Ravancho*, 658 F.2d at 175 (holding that Board cannot consider new evidence sought to be introduced in motion to reopen in isolation, but must consider it cumulatively with previous evidence).

In her petition for review, petitioner also contends that the Board failed to consider the evidence she presented on her inability to obtain employment and housing in Italy and on the psychological trauma she would suffer if she returned to Italy and her family. The Board's opinions show that it considered these factors. Because this court cannot second-guess the weight the Board chose to give these matters in considering petitioner's claim of extreme hardship, petitioner's remaining contentions do not establish reversible error. As we noted at the outset however, no single factor is dispositive of extreme hardship; all the evidence must be considered cumulatively. Therefore, after the Board fully considers the evidence relating to petitioner's business and her position in, and contributions to, the community, it must again consider the cumulative effect of that evidence and the other evidence petitioner presented, including the evidence relating to her ability to obtain employment and housing away from her family and the effect her family's closer proximity would have on her.

4. As the Board acknowledged in its opinion, reconsideration and reopening are separate and distinct forms of relief. A motion to reconsider asserts that the Board made an error in its earlier decision. The motion must state the reasons upon which it is based and cite pertinent authority. *See* 8 C.F.R. § 3.8. A motion to reopen, on the other hand, seeks to reopen the proceedings to present additional evidence and obtain a new decision. Such a motion must "state the new facts to be proved at the reopened hearing and ... be supported by affidavits or other evidentiary material." *Id.*

## V.

Based on the foregoing, the petition for review is GRANTED. The decisions of the Board of Immigration Appeals denying petitioner's application for suspension of deportation and her motion to reopen are REVERSED, and the matter is REMANDED to the Board for further consideration.

BRORBY, Circuit Judge, respectfully dissenting.

I dissent. The majority has rocketed the concept of relevancy to dazzling new heights.

If Ms. Turri has a case to avoid deportation it can result only from her demonstrating that deportation would result in extreme hardship to her. To make her case Ms. Turri has asserted she gave assistance to the community, deportation would cause her to lose her position in the community and she might lose the business she illegally operated in this Country. The majority concludes these factors are relevant to the issue of whether or not Ms. Turri will suffer extreme hardship and reverses the Board's decision because the Board failed to consider and discuss these factors.

The term "extreme hardship" simply means suffering far beyond the norm. The Board has an obligation to consider any fact which would have a tendency to make the existence of undue suffering more probable than not. Losing the ability to assist a community or losing a position in a community simply cannot result in extreme hardship. The same must be said of the loss of a business which was acquired and operated in a blatant violation of law. The deportation of Ms. Turri may well result in a loss to this Country. It will not result in an extreme hardship to her.

The majority's decision will have two consequences. First, it opens the door to every illegal alien to claim extreme hardship will result because they will lose their illegally obtained job or their status in the community, or because they will no longer be able to assist their illegally adopted community. Second, it will require the Immigration Judge and the Board to write concerning every contention, regardless of how fanciful, as this court may well decide the contention is relevant to the issue of extreme hardship. We have stretched the concept of relevancy far beyond its breaking point.

I would **AFFIRM**.