62 F.3d 1428
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Mosayeb DAVARI, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 94-9568.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 2, 1995.
 
 ORDER AND JUDGMENT[1]
 Before MOORE, SETH, and EBEL, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner, an Iranian native and citizen, seeks review of a decision of the Board of Immigration Appeals (Board) that upheld the immigration judge's (IJ) decision denying petitioner's applications for asylum, withholding of deportation, and suspension of deportation, 8 U.S.C. 1158(a), 1253(h), and 1254(a)(1). We affirm.
 
 
 3
 Petitioner lawfully entered the United States in 1982 as a nonimmigrant student. He graduated in 1986, stayed in the United States beyond the date authorized, and later applied for asylum. After respondent denied the application, it issued an order to show cause why petitioner should not be deported for remaining in the United States longer than permitted. Petitioner conceded deportability, but applied again for asylum and also applied for withholding of deportation and suspension of deportation.
 
 
 4
 The IJ held a hearing on the applications, and petitioner presented the following evidence. Petitioner testified that he originally left Iran in 1977 to attend school in England. Subsequently, he obtained a student visa to attend college in the United States beginning in 1982. In late 1984 and early 1985, he visited Iran for three weeks, for the first time since 1978. After seeing conditions in Iran and after returning to the United States, he testified that he became active in Iranian politics and joined the Iran-E-Jivad, a group opposed to the Khomeini regime. Petitioner attended five or six demonstrations and distributed literature from 1985 to 1991 and at times was interviewed by the media. He also distributed petitions in 1985 and 1986 and sang anti-Khomeini songs at an Iranian night club. Based on these activities, petitioner indicated he feared returning to Iran and believed he would be persecuted upon return. He testified that while he was a student he received threatening telephone calls at his home and changed his telephone number several times. Also, he claimed he once was warned at the post office to stop his anti-Khomeini regime activities. Petitioner stated that his educational funding stopped in late 1985, allegedly due to his political activities. He stated that he was sought in Iran at both his sister's and father's houses in 1990. His father, who supported the Shah, was jailed for two months in 1985 and is not allowed to leave Iran. One of his brothers was granted asylum in Germany after fleeing Iran. Petitioner's witness testified that of two Iran-E-Jivad members, one, who had never left Iran and who was a colonel in the Shah's army, was executed and the other, who returned from abroad, was imprisoned. Petitioner testified that deportation to Iran would be a hardship because he has spent the last eighteen years in the West, he will be persecuted if he returns to Iran due to his activities, he is not a practicing Moslem, and finding employment in Iran would be difficult.
 
 
 5
 The IJ orally denied all applications and concluded petitioner was deportable. The IJ denied asylum after determining petitioner's limited activities, many of which ended after his graduation, were not significant enough to show that he would be singled out for persecution upon returning to Iran and his fear of persecution was self-serving and speculative. The IJ also denied withholding of deportation. In denying the request for suspension of deportation, the IJ concluded petitioner would not suffer extreme hardship upon deportation as he has maintained close ties with his culture and heritage. Petitioner appealed, and the Board affirmed, primarily based upon the reasons set forth by the IJ. Petitioner then filed this petition for review.
 
 
 6
 Petitioner first argues the Board abused its discretion when it affirmed the IJ without articulating its reasons for denying relief. Because the Board indicated that it had reviewed the administrative record, the IJ's decision, and petitioner's contentions on appeal and that it adopted the IJ's reasoning, we conclude the Board sufficiently articulated its reasoning. See Panrit v. INS, 19 F.3d 544, 545-46 (10th Cir.1994)(approving summary order of Board in suspension case); see also Becerra-Jimenez v. INS, 829 F.2d 996, 1000 (10th Cir.1987)(Board decision sufficient if court of appeals able to determine Board heard, considered, and decided case).
 
 
 7
 Because the IJ applied the wrong standard in denying the request for asylum when he stated the evidence did not "compel the conclusion" that petitioner would be persecuted as a result of his activities, R. 80, petitioner contends that the Board should have either remanded to the IJ or reviewed the record de novo, applied the correct well-founded fear of persecution standard, and set forth reasons for denying relief. Without citing any authority, petitioner argues that when the Board adopts the reasoning of the IJ it must also adopt the standard used by the IJ. We disagree. Here, the Board recognized the IJ applied the wrong standard, set forth the right standard, and concluded, after reviewing the entire IJ decision, the IJ did not intend to apply a more stringent standard than appropriate. Contrary to petitioner's argument, the Board need not adopt the standard used by the IJ merely because it adopted the IJ's reasoning and result. Rather, the Board may choose to adopt only those parts of the IJ's opinion it agrees with and reject any errors of the IJ. Because the Board applied the correct legal standard, any alleged error in the legal standard applied by the IJ is harmless. See Kubon v. INS, 913 F.2d 386, 387 (7th Cir.1990); see also Becerra-Jimenez, 829 F.2d at 1000 (erroneous finding harmless).
 
 
 8
 Petitioner further contends the IJ should not have admitted an advisory opinion of the State Department premised on erroneous facts.[2] According to petitioner, although he objected to admission of the opinion, the IJ did not discuss the defect in the advisory opinion and the Board's opinion also is silent on the issue, therefore suggesting the Board did not consider the issue. Petitioner did not specifically object to the opinion in his brief to the Board; he merely made a general argument relating to the weight the IJ gave to the evidence. R. 32. In any event, the Board "is not required to discuss every piece of evidence when it renders a decision." Hadjimehdigholi v. INS, 49 F.3d 642, 648 n. 2 (10th Cir.1995).
 
 
 9
 Petitioner maintains the IJ, and therefore the Board, did not consider and evaluate all of the factors relating to extreme hardship in denying suspension of deportation. The Board stated in its opinion that it had reviewed the record. The record shows that the IJ considered all relevant factors of extreme hardship, thus precluding our re-evaluation of any particular factor. See Turri v. INS, 997 F.2d 1306, 1308-09 (10th Cir.1993). The Board therefore was not required to write at length on the suspension issue. See Becerra-Jimenez, 829 F.2d at 1000.
 
 
 10
 Petitioner next argues that he is eligible for asylum because he is a refugee as defined by 8 U.S.C. 1101(a)(42)(A) due to his well-founded fear of future persecution. Section 1158(a)
 
 
 11
 "establishes a two-part test for determining whether a deportable alien is statutorily eligible for asylum. Step one requires the alien to show that he ... is a refugee by proving ... a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Step two allows that once the alien has established statutory eligibility as a refugee, the Attorney General may apply his discretion in granting asylum."
 
 
 12
 Castaneda v. INS, 23 F.3d 1576, 1578 (10th Cir.1994)(quoting Nguyen v. INS, 991 F.2d 621, 625 (10th Cir.1993) (citations and quotations omitted)).
 
 
 13
 To reverse a denial of asylum, the evidence must compel reversal and a conclusion that the petitioner has a well-founded fear of persecution. INS v. Elias-Zacarias, 502 U.S. 478, 112 S.Ct. 812, 815 n. 1 (1992). Thus, a Board's determination of ineligibility for asylum will be upheld if it is " 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' " Id. at 815 (quoting 8 U.S.C. 1105a(a)(4)).[3]
 
 
 14
 The well-founded fear of future persecution standard contains a subjective fear component and an objective well-founded component. Sadeghi v. INS, 40 F.3d 1139, 1142 (10th Cir.1994). The petitioner must prove through "credible, direct, and specific evidence" a well-founded fear of future persecution. Id.
 
 
 15
 The record does not establish a well-founded fear of future persecution. The State Department opinion was not prejudicial in light of petitioner's testimony and other evidence. As the IJ found, petitioner's political activities were not significant, especially after his graduation. Petitioner's occasional speaking to the press did not significantly distinguish him from others who also were politically active. "Persecution has been defined as the offensive infliction of suffering or harm and encompasses more than just restrictions or threats to life and liberty." Hadjimehdigholi, 49 F.3d at 646 (internal quotation omitted). Accordingly, we conclude there is substantial evidence supporting the determination that petitioner is not eligible for asylum and reversal is not compelled.[4]
 
 
 16
 Petitioner finally argues that he qualifies for suspension of deportation. As applied to petitioner, the order of deportation may be suspended if he proves United States presence for at least seven years, good moral character, and that deportation would result in extreme hardship to him. See 8 U.S.C. 1254(a)(1). Only the third criteria is in dispute here. We review the extreme hardship determination for an abuse of discretion. Panrit, 19 F.3d at 545. After considering all of the alleged hardships, singly and cumulatively, we conclude there was no abuse of discretion in denying a suspension of deportation. See Amaya v. INS, 36 F.3d 992, 995 (10th Cir.1994). Petitioner's absence from Iran for eighteen years and his westernization, along with his other allegations of hardship, do not establish extreme hardship.
 
 
 17
 The decision of the Board of Immigration Appeals is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The advisory opinion stated that the Department had "serious doubts" about petitioner's claim due to his three-week visit to Iran. R. 254. Petitioner argues that the opinion is incorrect because he did not become involved in anti-Khomeini activities until after his return from visiting Iran. In light of petitioner's testimony and other evidence, however, the admission of the opinion, even if erroneous, was not prejudicial. Cf. Carvajal-Munoz v. INS, 743 F.2d 562, 576 (7th Cir.1984)(petitioner's own evidence, even without consideration of advisory opinion, did not satisfy burden)
 
 
 [3]
 An abuse of discretion standard is applied to the ultimate decision of the Attorney General whether to grant asylum. Castaneda, 23 F.3d at 1578. Because petitioner did not meet his step one burden of establishing his status as a refugee, this court need not address the Attorney General's discretionary refusal to grant asylum at step two. See id
 
 
 [4]
 Because petitioner did not meet his burden of showing eligibility for asylum, he also did not meet the higher standard required for withholding of deportation. See Castaneda, 23 F.3d at 1578