LUCERO, J.,
dissenting.
In the face of inadequate reasoning by the Bureau of Immigration Appeals (“BIA”) in its rejection of Kamal Prasad Bhattarai’s Convention Against Torture (“CAT”) claim, the majority replaces the agency’s evaluation of the evidence with its own. (Majority Order 217.) Because the majority’s analysis runs afoul of S.E.C. v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), I respectfully dissent.[1]
I
I do not quarrel with the majority’s statement of facts. But to illustrate where I part ways with my colleagues, I provide more detail on the relevant procedural history.
After determining that Bhattarai was a credible witness, the Immigration Judge (“IJ”) found that Bhattarai and his family suffered acts of intimidation and violence, that the threats to Bhattarai rose to the level of harm necessary to support a case for past persecution, that Bhattarai “faces a very dangerous situation should he return to Nepal,” and that Bhattarai could not relocate anywhere in Nepal to avoid this danger. But the IJ ultimately concluded Bhattarai suffered at the hands of local Maoists because of his economic and occupational status, not his political opinion or social group, and was thus ineligible *220 for asylum under 8 U.S.C. § 1101(a)(42)(A).
Against this backdrop of danger created by Maoist guerillas, the IJ also evaluated and rejected Bhattarai’s CAT claim because Bhattarai had “almost diplomatic status” in the government, and “the government of Nepal would [not] torture the respondent or ... acquiesce in his torture.”
These findings were made, however, before the Maoist revolutionary party, formerly listed by the United States as a foreign terrorist organization, became the ruling government of Nepal. Bhattarai sought reopening of his case partly in response to the regime change. Although he submitted several articles describing the election of the Maoist government and predicting the election’s consequences, the BIA declined to reopen, addressing Bhattarai’s CAT argument in a solitary paragraph:
The respondent also seeks reopening based on new evidence reporting on elections conducted in Nepal in 2008, and reflecting that Pushpa Kamal Dahal Prachanda, a Maoist, has been elected Prime Minister. Although these are new developments, the respondent’s submissions fail to satisfy his “heavy burden” of showing that if his proceedings were reopened this new evidence offered would likely change the result reached in his case. See Matter of Coelho, 20 I. & N. Dec. 464, 473 (BIA 1992); INS v. Abudu, 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). The respondent specifically seeks an opportunity to apply for CAT protection based on this new evidence. See Motion at 9-10. However, this evidence fails to demonstrate, prima facie, that it is more likely than not that he will be tortured by, or with the consent or acquiescence, of officials of the Government of Nepal as presently constituted. See 8 C.F.R. § 1208.16(c) (2009) (standard of proof for withholding of removal under the CAT); 8 C.F.R. § 1208.18(a) (2009) (defining “torture”); Ferry v. Gonzales, 457 F.3d 1117, 1131 (10th Cir.2006); Matter of M-B-A-, 23 I. & N. Dec. 474 (BIA 2002); Matter of J-E-, 23 I. & N. Dec. 291 (BIA 2002)[, overruled by Azanor v. Ashcroft, 364 F.3d 1013, 1020 (9th Cir.2004)].
II
We review the BIA’s decision to deny a motion to reopen or to reconsider for abuse of discretion. See Infanzon v. Ashcroft, 386 F.3d 1359, 1362 (10th Cir.2004). “The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements.” Id. Under this standard, the BIA must explain its rationale regarding each of a petitioner’s arguments. We will not “affirm on the theory that the Board necessarily considered whatever the petitioner asserted” because “this would free the Board of the obligation to articulate a reasoned basis for its decisions, eliminating any guaranty of rationality and foreclosing meaningful review.” Turri v. I.N.S., 997 F.2d 1306, 1310 (10th Cir.1993), superseded by statute on other grounds as stated in Escalera v. I.N.S., 222 F.3d 753, 756 (10th Cir.2000). Simple recitation of rules of law and conclusory statements that a petition fails to make out a case are insufficient to demonstrate meaningful, reasoned decision-making. See, e.g., Mickeviciute v. I.N.S., 327 F.3d 1159, 1162 (10th Cir.2003) (court was unable to determine from a case citation the basis for denial of the petition, and thus concluded that it could not “perform a meaningful review”); Turri, 997 F.2d at 1309 (remanding when the *221 BIA listed relevant legal factors, stated it had reviewed the record, and denied petitioner’s application). Even when the BIA delves into the facts of a case, we must be able to ascertain that it “cumulatively considered all the relevant evidence” when evaluating a motion to reopen. See Dulane v. I.N.S., 46 F.3d 988, 996 (10th Cir.1995).
If a BIA order is summary or unclear, we will review the IJ’s decision, either as the final agency action or to aid us in discerning the BIA’s reasoning. See Yuk v. Ashcroft, 355 F.3d 1222, 1230 (10th Cir.2004); Razkane v. Holder, 562 F.3d 1283, 1287 (10th Cir.2009). “[W]hen seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ’s more complete explanation of those same grounds.” Uanreroro v. Gonzales, 443 F.3d 1197, 1204 (10th Cir.2006). If, after examining the IJ’s decision and the BIA’s order, we cannot discern the agency’s line of reasoning, we must remand to the agency for further explanation. See, e.g., Mickevieiute, 327 F.3d at 1162-63. We may not scour the record “for reasoning to support the BIA’s decision because a court may not uphold an agency action on grounds not relied on by the agency.” Id. at 1163 (quotations omitted); see also I.N.S. v. Orlando Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).
Such judicial restraint serves at least two purposes. First, due process requires that petitioners, even non-citizens facing removal, receive “a reasoned explanation” for the rejection of their claims. Yuk, 355 F.3d at 1232. Second, it is a well-established general principle of administrative review that courts must not “intrude upon the domain which Congress has exclusively entrusted to an administrative agency.” Chenery, 318 U.S. at 88, 94, 63 S.Ct. 454. Chenery’s rule thus secures the separation of powers among the three branches.
Ill
The BIA may deny a motion to reopen for several reasons, including the petitioner’s failure to establish a prima facie case for the relief sought. Mickeviciute, 327 F.3d at 1162 (citing Abudu, 485 U.S. at 104-05, 108 S.Ct. 904). To establish eligibility for withholding of removal under the CAT, an applicant must show “that it is more likely than not that he or she would be tortured if removed.” 8 C.F.R. § 1208.16(c).
A
Without analysis, the BIA order concludes that Bhattarai did not establish a prima facie case under the CAT. Its discussion of the CAT claim is four sentences long. After merely restating the new evidence — that the leader of the Maoist revolutionary party was elected prime minister — the order concludes with no further elaboration that Bhattarai has not met his “heavy burden” of showing that his case would be decided differently in light of the new evidence, because he failed to show that it is “more likely than not that he will be tortured.” To be sure, the BIA correctly states the applicable legal standards. But it never applies those standards.[2] Consequently, it does not meet *222 the minimum requirements we have set for a reasoned decision. See Infanzon, 386 F.3d at 1362; Mickeviciute, 327 F.3d at 1162-63.
In Mickeviciute, we also reviewed the denial a motion to reopen. Id. at 1161. The petitioner in that case contended that she received ineffective assistance of counsel and sought consideration of her diversity visa interview request as a remedy. Id. The BIA denied the motion, but did not identify which of the Abudu factors compelled its decision. Id. at 1162. Although the dissent argued it was clear the BIA denied the petition because it failed to state a prima facie case, we rejected the use of post-hoc analysis. Id. at 1163 n. 3. Relying on the Supreme Court’s decision in Orlando Ventura, we remanded the case rather than substitute our reasoning for the BIA’s. Id. 1164-65.
The BIA order before us is similarly unilluminating. Although the order at least names the Abudu factor it applied, and thus identifies the relevant standard, it does not explain why that factor precludes reopening Bhattarai’s case. Indeed — and perhaps unsurprisingly given its brevity — what the order is missing is more telling than what it contains. The order does not contain a single clause beginning with “because” or an equivalent word or phrase. It does not analyze the individualized facts relating to Bhattarai’s CAT claim. It does not reconcile its conclusions with the relevant findings of the IJ, which it states earlier in the order were not clearly erroneous.
Unfortunately, the IJ’s decision does not help resolve the matter. In normal circumstances, when faced with a summary decision by the BIA, we turn to the decision of the IJ for clarification. See Razkane, 562 F.3d at 1287. However, in this case, the IJ’s decision regarding the CAT was based entirely on a fact that is no longer true: that Bhattarai was a friend to the government of Nepal. In other words, the logic of the IJ decision supports Bhattarai’s case for reopening his CAT claim. The IJ found that threats and acts of violence directed at Bhattarai and his family were not coming from the government of Nepal, but from the Maoists. Now, the two are one and the same.
No matter, says the government, the political shift in Nepal does not inevitably lead to the conclusion that it is more likely than not that Bhattarai will be tortured. See 8 C.F.R. § 1208.16(c). For example, it contended at oral argument that we should disregard threatening letters sent to Bhattarai, on Maoist letterhead, because we cannot necessarily link the Maoists who blew up Bhattarai’s home with the Maoists who are now in power. The government’s brief also goes to great lengths to explain why the articles Bhattarai submitted do not justify reopening.
But whether the government’s proffered lines of reasoning have merit is not the question before us. Our review is limited to the rationale provided by the BIA and the IJ, both of which are deficient. In the wake of the Maoist ascent to power, the agency must grapple in a meaningful way with the new evidence and provide a reasoned decision. See Turri, 997 F.2d at 1310-11 (a mere recitation of the petitioner’s submissions and statement that they *223 have been reviewed and rejected is insufficient reasoning); Dulane, 46 F.3d at 995-96 (BIA order must reflect that it actually considered the new evidence in combination with the previous evidence). Its failure to do so in this case constituted an abuse of discretion.
B
The majority does exactly what Chenery forbids. It usurps the agency’s role by reevaluating the evidence presented to the BIA, concluding that there is “evidence of improved conditions in Nepal” and that Bhattarai’s submissions thus cannot support his prima facie CAT case. (Majority Order 217.) This is a rosy reading of Bhattarai’s evidence. The articles certainly report some hopeful aspirations expressed by members of Nepal’s government and other diplomatic sources. Yet the same record contains more dire predictions. One article remarks that the Maoists had “accepted ballot instead of bullet to seize” power only a year before the elections. Another explains how, in the lead-up to election, the Maoists “never renounced violence and constantly spoke of urban-based revolt” if the election failed. A rival government minister was reportedly brutalized by Maoists after success in a party election. Facts like these suggest that even after the elections, Maoist guerillas “could now become a band of crude, state-sponsored enforcers,” in the words of a BBC article among Bhattarai’s submissions. While acknowledging that becoming part of the political mainstream may require pragmatism by the Maoists, the same article condemns the overt violence perpetrated by the Maoists against teachers and political enemies.
In other words, this evidence is open to multiple interpretations.[3] In such cases, we must resist our urge to break the tie, because we are reviewing the BIA’s decision-making, not revisiting its conclusion. See Orlando Ventura, 537 U.S. at 17-18, 123 S.Ct. 353; Mickeviciute, 327 F.3d at 1164-65. In Orlando Ventura, the Supreme Court reversed a circuit court that had conducted its own review of evidence submissions to the BIA: although the lower court asserted it was “compelled” to read the facts in a particular manner, it erred by failing to defer that conclusion until the agency provided its rationale. 537 U.S. at 15, 18, 123 S.Ct. 353. Abiding by the rule articulated in Chenery, 318 U.S. at 94, 63 S.Ct. 454, requires this restraint. Fact-finding is not our role, and “if our review is to have any meaning, it must be based on the Board’s own articulation of its reasons for denying relief, not on our assumptions about what the Board considered and decided.” Turri, 997 F.2d at 1310 (quotation omitted).
IV
Although the IJ concluded that Bhattarai was in danger and had suffered at the hands of the Maoists, he rejected Bhattarai’s CAT claim because Bhattarai was a friend to the government of Nepal. Despite Bhattarai’s presentation of evidence that the very political party that threatened him is now the lawful government of *224 Nepal, the BIA summarily rejected his petition to reopen. The cognitive dissonance created by this line of “reasoning” demands further explanation.
Especially in a case like this one, which “may have life or death consequences, ... the costs of error are very high.” Albathani v. I.N.S., 318 F.3d 365, 378 (1st Cir.2003). I would abide by Chenery’s rule, leave the fact-finding to the agency entrusted by Congress to make such decisions, and remand Bhattarai’s case for further proceedings before the BIA. I would not, as the majority does, reject a petition based on my own reinterpretation of the record. Because the BIA abused its discretion by inadequately articulating its reasoning, I must respectfully dissent.

. I take no issue with the majority's handling of Bhattarai’s asylum claim. My dissent is limited to its reasoning with respect to his CAT claim.

. If any of the cited cases were factually analogous to Bhattarai’s case, we might have a better idea of the agency’s reasoning. However, the cases appear to be cited for the bare purpose of establishing the basic legal principles at work. Matter of Coelho discusses the petitioner's “heavy burden” to show that reopening would yield different results upon remand. 20 I. & N. Dec. at 473. The portion of Abudu cited similarly refers to Attorney General regulations disfavoring motions to reopen. 485 U.S. at 110, 108 S.Ct. 904. Ferry is a CAT case, regarding conditions in the United Kingdom, in which there had been no *222 regime change. In re M-B-A- is the converse of this case, involving events that happened under a regime that was no longer in power. 23 I. & N. Dec. at 476, 478-79. Finally, Matter of J-E-, which has been overruled, see Azanor, 364 F.3d at 1020, unpacked the meaning of "torture” under the CAT, in the context of Haitian prison conditions. 23 I. & N. Dec. at 291. Absent some comparison of the facts in these cases, or application of their principles to Bhattarai’s case, the BIA’s analysis remains deficient.

. The majority accuses me of engaging in a performative contradiction — suggesting that remand would violate Chenery and drat I have "conducted [my] own de novo inquiry ... and concluded tíiat [I] would have reached a different decision than the BIA.” (Majority Order 218.) To the contrary, I would not reach any conclusion regarding the evidence in this case because the BIA has yet to do so. The government's proffered line of reasoning, echoed in the majority's discussion, is nowhere to be found in the BIA's order. Remand in this case could not "violate Chenery ” (Majority Order 218.); it is the only way to uphold Chenety.