MATTER OF SANGSTER

In Deportation Proceedings

A–10198568

*Decided by Board September 14, 1965*

While respondent's deportation would result in economic detriment to her, such economic detriment, in the absence of other substantial equities, is not tantamount to "extreme hardship" within the meaning of section 244(a)(1), Immigration and Nationality Act, as amended, since there is no evidence of record that she could not obtain suitable employment in Jamaica, her native country, or England, and it is due only to the Government's liberal student and trainee policy that she has been able to acquire the statutory continuous physical presence in this country for suspension of deportation.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Remained longer—nonimmigrant student.

The trial attorney at the New York, New York Office of the Service appeals from the decision entered by the special inquiry officer on June 18, 1965, granting the respondent's application for suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act and directing that if Congress takes no action adverse to the order granting suspension of deportation, the proceedings be canceled, * * * and further ordering that in the event the Congress takes action reverse to the order granting suspension of deportation, these proceedings be reopened upon notice to the alien. The respondent, a 36-year-old married female, native and citizen of Jamaica, has had continuous residence in the United States since her admission at Miami, Florida on or about September 14, 1954 as a nonimmigrant student. Deportation proceedings were instituted against the respondent on January 18, 1965. The order to show cause among other things alleges that she was authorized to remain in the United States until December 31, 1964; that she has remained in the United States without authority since the latter date. A hearing in deportation proceedings was held at New York,

New York on March 3, 1965 at which time the respondent and counsel admitted the truth of the factual allegations set forth in the order to show cause and conceded deportability on the charge stated therein (pp. 2-3). The evidence of record clearly establishes that the respondent is subject to deportation under the provisions of section 241(a)(2) of the Immigration and Nationality Act, in that, after admission as a nonimmigrant under section 101(a)(15) of the Act, she remained in the United States for a longer time than permitted.

The trial attorney by brief and the Service representative in oral argument on appeal urged that the order entered by the special inquiry officer on June 18, 1965 granting the respondent's application for suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act be withdrawn and the respondent be accorded the privilege of voluntary departure. The Service representative argued the facts and circumstances in this case do not affirmatively establish that the respondent would suffer "extreme hardship" if compelled to depart from the United States for England or to Jamaica the country of her nativity. Counsel for the respondent urged that the order of the special inquiry officer granting the respondent's application for suspension of deportation be approved. Counsel asserted that the respondent should be allowed to remain in the United States and adjust her immigrant status to that of a permanent resident as provided in section 244(a)(1) of the Act. Counsel declared that the grant of suspension of deportation is justified because the respondent would suffer extreme hardship within the meaning of the statute if compelled to depart from the United States.

On examination of the record, we find that the respondent was over 26 years old when she was admitted to the United States as a nonimmigrant student in September of 1954. Respondent testified that immediately after her admission to the United States she enrolled as a student at Fisk University; that she attended said university from September 1954 until she was graduated therefrom on January 28, 1959 at which time she was awarded a Bachelor of Arts Degree with a major in biology (p. 7 & Ex. 9). Respondent testified that after being graduated from Fisk University she received permission from the Immigration Service to take a course in laboratory technology; that she registered at the Manhattan Medical and Dental Assistants' School in New York, New York and completed her course of study in the latter school in March 1960 (p. 8 & Ex. 4). The respondent testified that after completing her course at the Manhattan Medical and Dental Assistants' School she obtained employment

310

at the Maimonides Hospital in Brooklyn, New York; and that she has been working at said hospital since May 1960 (pp. 8 & 9 and Exs. 3 & 8). The respondent testified that her father is a native and citizen of Jamaica, and that her mother is a native of Jamaica presently residing in England (pp. 8 & 9).

The respondent's application requesting that her deportation be suspended under section 244(a) of the Immigration and Nationality Act was subscribed, sworn to and submitted for consideration at the New York, New York office of the Service on March 3, 1965. The respondent has been employed by the Maimonides Hospital from May 1960 to the present time as a laboratory technician at a salary of $94 per week (Exs. 2, 3 & 10). The respondent's assets, comprising of cash and personal property, are valued at $4700 (Ex. 2). When the respondent was asked in what manner she would suffer hardship if required to leave the United States and return to her native country she replied that she had broken her ties with the people back home and that it would be difficult to adjust there since she has now adjusted to life in the United States (p. 10). The respondent testified that prior to her employment at the aforenamed hospital she was supported for the most part by her father plus small earnings as a part-time employee at Fisk University (pp. 12–14).

The respondent was married in a civil ceremony to a lawful resident alien of the United States at New York, New York on December 14, 1964. The respondent testified her marriage has never been consummated; that she and her husband have never lived together since their marriage in December 1964. Respondent's husband in an affidavit subscribed and sworn to before an officer of the Service on May 6, 1965 deposed that he met the respondent approximately three months prior to their marriage on December 14, 1964. He stated his marriage had never been consummated and that he had never had sexual intercourse with his wife either prior or subsequent to the date the marriage ceremony was performed in December 1964. The respondent's husband testified that he is not ready to accept the responsibility of a wife and family, that he contracted the aforementioned marriage for the privilege of determining whether he could become a husband and father. The testimony of this witness indicates he is not ready to assume such a role and he advised his wife, the respondent herein, during March 1965 that it would be better for both of them if they were to have their marriage annulled. The respondent's husband declared that the respondent herein told him she would contact a lawyer to see what could be done; that he did not know at the time he executed the aforementioned affidavit whether or

311

not his wife had instituted annulment proceedings. The respondent's testimony reveals that on June 17, 1960 she was granted an extension of temporary stay until July 1960 for the purpose of obtaining practical training at the Maimonides Hospital (p. 16 & Ex. 8).

The respondent testified and the record shows that on July 19, 1960 she filed an application to extend time of temporary stay and an application for permission to accept employment (Ex. 9). She testified she was never informed that this latter application for extension of time to take practical training was granted (p. 18). When the respondent was interviewed at the New York, New York office of the Service on July 25, 1962 regarding her nonimmigrant status (p. 18) she revealed she was a full-time employee of the Maimonides Hospital (pp. 18 & 19). The record establishes there was executed and filed on behalf of the respondent by the Maimonides Hospital a petition to accord the respondent quota immigrant status under section 203(a)(1) of the Immigration and Nationality Act. She testified she did not leave the United States upon completion of her practical training because she wanted to remain in the United States (pp. 9 & 10). The visa petition filed by the Maimonides Hospital to accord the respondent first preference status under section 203(a)(1) of the Immigration and Nationality Act was denied by the Service on October 5, 1964 and counsel for the respondent was advised of this action on December 3, 1964 and at the same time the respondent was granted until December 31, 1964 within which to effect her voluntary departure from the United States (p. 28).

The respondent testified that she could resume her teaching in the public schools of Jamaica if compelled to return to that country. When the respondent was asked if she could use the training she received in the United States in the field of chemistry and laboratory technology if compelled to return to Jamaica she replied, "Yes" (p. 24). She testified she has not yet instituted proceedings to have her marriage annulled (p. 25). The respondent has no close family ties or dependents living in the United States. It is conceded that she is a person of good moral character and has the necessary continuous physical presence in the United States. The respondent, because of the Government's liberal student and trainee policy has been able to acquire the necessary continuous physical presence in the United States to meet the requirements of the statute.

Respondent has acquired an excellent education since her admission to the United States. Unquestionably she will be able to utilize the advanced education she has acquired in the United States in obtaining suitable and acceptable employment in Jamaica or Eng-

land. It has been held that "extreme hardship" is not a definable term of fixed and inflexible content or meaning. The elements required to establish "extreme hardship" are dependent upon the facts and circumstances peculiar to each case (Cf. *Matter of Hwang*, Int. Dec. No. 1319, and *Matter of Uy*, Int. Dec. No. 1464). In the instant case, we are concerned with an alien who has been in the United States since her admission thereto in September of 1954. She has no dependents living in this country. Her father is a native, citizen and resident of Jamaica, and her mother a native of Jamaica is presently residing in England. Concededly the respondent's deportation from the United States would result in economic detriment to her. It is the considered opinion of this Board, however, that under the circumstances present in this particular case economic detriment in and of itself does not amount to "extreme hardship." There has been no showing that the respondent could not obtain employment in her native country or England. Factually she has testified that she could use to her advantage the training she acquired in the United States in the field of chemistry and laboratory technology. There are no substantial equities in this case except those arising from the economic factor and this factor, standing alone, is insufficient to support a finding of "extreme hardship" within the meaning of the statute. There is not a scintilla of evidence present in this record showing that the respondent could not obtain suitable employment in Jamaica or England and as previously stated it is only because of the Government's liberal student and trainee policy that she has been able to acquire the necessary continuous physical presence requirements of the statute.

After carefully considering all the evidence of record together with the representations of the trial attorney and counsel on appeal we will direct that the special inquiry officer's order of June 18, 1965 granting the respondent's application for suspension of deportation be withdrawn. Since the respondent is statutorily eligible for voluntary departure we will remand the case to the special inquiry officer so that he may give consideration to her alternative request for the discretionary relief of voluntary departure and to afford the special inquiry officer the opportunity to direct the respondent's deportation to the country designated by her and for such further action as may be necessary and appropriate in the premises. Accordingly, the following order will be entered.

ORDER: It is ordered that the appeal of the Service trial attorney be and the same is hereby sustained.

*It is further ordered* that the order entered by the special inquiry

officer on June 18, 1965, directing that the alien's deportation be suspended under the provisions of section 244(a)(1) of the Immigration and Nationality Act be and the same is hereby withdrawn.

*It is further ordered* that the case be remanded to the special inquiry officer for the purposes set forth in the foregoing opinion and for the entry of an appropriate order.