MATTER OF ANDERSON

In Deportation Proceedings

A-22154419

*Decided by Board August 31, 1978*

(1) Criteria discussed in the House Judiciary Committee report to H.R. 8713 (94th Congress) with reference to the extreme hardship requirement of section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. 1254(a)(1), are not inconsistent with the prevailing interpretation of that requirement as articulated by the courts and the Board.

(2) While political and economic conditions in an alien's homeland are relevant factors in determining extreme hardship under section 244(a)(1), they do not justify a grant of relief unless other factors such as advanced age, severe illness, family ties, etc. combine with economic detriment to make deportation extremely hard on the alien or the citizen or permanent resident members of his family.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor—remained longer than permitted

ON BEHALF OF RESPONDENT:
Howard Rosengarten, Esquire
853 Broadway
New York, New York 10003

ON BEHALF OF SERVICE:
George Masterton
Appellate Trial Attorney

BY; Milhollan, Chairman; Appleman, Maguire, and Farb, Board Members

In a decision dated November 4, 1977, an immigration judge found the respondent deportable as charged, denied his application for suspension of deportation under section 244(a) of the Immigration and Nationality Act, 8 U.S.C. 1254(a), but granted him the privilege of voluntary departure in lieu of deportation. The respondent has appealed. The appeal will be dismissed.

The respondent, a 55-year-old native and citizen of the Dominican Republic, entered the United States on August 3, 1969, as a nonimmigrant visitor. He has conceded deportability as a visitor who has remained here beyond the period authorized. The finding we are asked to review on appeal concerns the denial of suspension of deportation.

In order to establish eligibility for section 244(a)(1) relief, an alien must prove that he has been physically present in the United States for the last seven years, that he has been a person of good moral character for the same period, and that his deportation will result in extreme hardship to himself or to his United States citizen or permanent resident spouse, children, or parents.

The immigration judge appears to have found that the respondent failed to establish two of the three statutory criteria, continuous physical presence and extreme hardship. The issue of the respondent's good moral character was not challenged by the Immigration and Naturalization Service. In view of our conclusions on the hardship issue, we find it unnecessary to reach the question of continuous physical presence.

In testimony given at the hearing, the respondent contended that the economy of the Dominican Republic is so severely depressed that he will find it difficult to support himself and his wife, who is also in the United States illegally. Medical treatment for her psychological maladjustments could not be afforded, according to the respondent. The immigration judge concluded that the thrust of the respondent's argument was that he would suffer economic detriment if deported. The judge correctly noted that under the prevailing interpretation of the extreme hardship requirement, financial hardship in the absence of substantial additional equities has not been a persuasive factor. See *Matter of Uy*, 11 I. & N. Dec. 159 (BIA 1965); *Matter of Sangster*, 11 I. & N. Dec. 309 (BIA 1965); *Matter of Gibson*, Interim Decision 2541 (BIA 1976).

At oral argument, counsel for the respondent directed our attention to recent comments by the House Judiciary Committee on the issue of extreme hardship. Counsel was referring to a report by the committee in the 94th Congress on §4 of H.R. 8713, a bill which provided for discretionary adjustment of status for certain aliens whose deportation would result in "unusual hardship". The committee report contains the following discussion:

> With respect to determining hardship under section 4 of this bill the Attorney General is expected to apply similar criteria to that which is currently utilized in granting suspension of deportation and consider the following facts and circumstances among others: age of the subject; family ties in the United States and abroad; length of residence in the United States; condition of health; conditions in the country to which the alien is returnable—economic and political; financial status—business and occupation; the possibility of other means of adjustment of status; whether of special assistance to the United States or community; immigration history; position in the community.[1]

---

[1] H.R. 8713 was reported out of Committee to the full House; however, no action was taken on the measure by the House prior to the adjournment of the 94th Congress. For a discussion of the limited significance of legislative committee statements in the area of administrative discretion, see *Matter of Riccio*, Interim Decision 2463 (BIA 1976).

In light of these statements, counsel contends that the impoverished economy of the Dominican Republic should be a dispositive factor in this suspension application.[2]

Conditions in an alien's homeland are relevant in determining hardship, as the Committee pointed out. It is obvious, however, that laying critical emphasis on the economic and political situation would mandate a grant of relief in most cases for it is a demonstrable fact that despite the beleaguered state of our own economy, the United States enjoys a standard of living higher than that in most of the other countries of the world. For this reason, most deported aliens will likely suffer some degree of financial hardship. Nonetheless, we do not believe that Congress intended to remedy this situation by suspending the deportation of all those who will be unable to maintain the standard of living at home which they have managed to achieve in this country. Clearly, it is only when other factors such as advanced age, severe illness, family ties, etc. combine with economic detriment to make deportation extremely hard on the alien or the citizen or permanent resident members of his family that Congress has authorized suspension of the deportation order.

We do not dispute the respondent's characterization of the Dominican economy. However, we cannot find a sufficient number of other adverse factors to conclude that deportation will result in the degree of hardship that section 244(a)(1) was designed to alleviate. The respondent has spent most of his eight years in the United States as a self-employed carpenter. Prior to his arrival, he also worked as a carpenter for the Dominican Government where his ability was apparently highly regarded. While he has several cousins who live in the United States, his brothers, sisters, and ten children all live in the Dominican Republic. Treatment of his wife's emotional difficulties can surely be obtained at home, albeit with economic sacrifices. Despite the sympathetic factors in this case, we are not persuaded that the respondent warrants the extraordinary relief authorized in section 244(a)(1) of the Act.

The respondent's original voluntary departure time was three months. That period has expired. In keeping with our decision in *Matter of Chouliaris*, Interim Decision 2572 (BIA 1977), we will grant the respondent thirty days from the date of this order in which to voluntarily depart from the United States.

ORDER: The appeal is dismissed.

FURTHER ORDER: The respondent is permitted to depart from the United States voluntarily within 30 days from the date of this order

---

[2] We are aware of the fact that the respondent has requested that he be sent to Venezuela, rather than the Dominican Republic, if deportation becomes necessary. For the purposes of assessing the greatest degree of potential hardship, however, we will assume that the respondent's request cannot be honored.

and under such conditions as the District Director deems appropriate; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.