# In re Bing Chih KAO, Respondent
# In re Mei Tsui LIN, Respondent

File A70 465 645 - Los Angeles
File A75 474 902

*Decided May 4, 2001*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) In evaluating an application for suspension of deportation, the hardship to the applicant's United States citizen child must be given careful consideration, as the applicant's eligibility for relief may be established by demonstrating that his or her deportation would result in extreme hardship to the child.

(2) The standard for determining "extreme hardship" in applications for suspension of deportation is also applied in adjudicating petitions for immigrant status under section 204(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1154(a)(1) (1994 & Supp. V 1999), *as amended*, and waivers of inadmissibility under section 212(i) of the Act, 8 U.S.C. § 1182(i) (Supp. V 1999).

(3) The respondents met the extreme hardship requirement for suspension of deportation where their oldest daughter, who is a 15-year-old United States citizen, has spent her entire life in the United States, has been completely integrated into the American lifestyle, and is not sufficiently fluent in the Chinese language to make an adequate transition to daily life in her parents' native country of Taiwan. *Matter of Pilch*, 21 I&N Dec. 627 (BIA 1996), distinguished.

FOR RESPONDENT: William Kiang, Esquire, Alhambra, California

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Elsa I. Martinez, Assistant District Counsel

BEFORE: Board En Banc: DUNNE, Vice Chairman; SCHMIDT, HOLMES, HURWITZ, VILLAGELIU, GUENDELSBERGER, MATHON, ROSENBERG, MOSCATO, MILLER, BRENNAN, ESPENOZA, and OSUNA, Board Members. Concurring Opinion: SCIALABBA, Acting Chairman; joined by GRANT, Board Member. Dissenting Opinion: JONES, Board Member, joined by HEILMAN, FILPPU, and COLE, Board Members.[1]

---

[1] Board Member Kevin A. Ohlson did not participate in the decision in this case.

MILLER, Board Member:

In a decision dated January 12, 1998, an Immigration Judge found the respondents deportable as charged, denied their applications for suspension of deportation under former section 244(a) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a) (1994) (repealed 1996), and granted them voluntary departure. The respondents have appealed. The Immigration and Naturalization Service has filed an opposition to the respondents' appeal. The appeal will be sustained. The request for oral argument is denied. *See* 8 C.F.R. § 3.1(e) (2001).

## I. FACTUAL BACKGROUND

The respondents are a 45-year-old male and a 43-year-old female, husband and wife, who are natives and citizens of Taiwan. The respondents were admitted to the United States on June 3, 1984, as nonimmigrant students with authorization to remain in this country until June 10, 1985. On March 10, 1997, the Service personally served both respondents with an Order to Show Cause and Notice of Hearing (Form I-221), alleging that they were subject to deportation for having remained in the United States without authorization.

At their hearing before the Immigration Judge, the respondents applied for suspension of deportation and both testified in support of their application for relief. The respondents had five children and were expecting their sixth child at the time of the hearing.[2] All of their children were born in the United States: the oldest daughter, Claire, is currently 15 years old; their daughter, Diana, is 12 years old; their son, Max, is 10 years old; their daughter, Eileen, is 8 years old; and their son, Nicholas, is 6 years old. All of the children are doing well in school.

### A. Female Respondent's Testimony

The female respondent testified that although she speaks to her children at home in both English and Chinese, the children reply only in English. The respondent also stated that only the three oldest children had been taking Chinese language courses, which last for 90 minutes on Sundays. Claire had been in classes for 4 years, Diana for 3 years, and Max for 2 years. The children do not attend these classes regularly because if there is a church function, the children do not go to class. The respondent stated that her oldest daughter, Claire, knew less than 100 words in Chinese. If she were in school in China, she would have the Chinese language skills of a first grader.

---

[2] The record has not been updated to reflect whether the respondents' sixth child was actually born. We will therefore consider only the five children that the respondents had at the time of the hearing in our evaluation of their application.

The respondent stated that if she were deported to Taiwan, her main concern would be for the children because they do not speak Chinese very well. The respondent worries that the children, especially the oldest, would not be able to follow the Taiwan school system. There is only one English school in Taiwan, but there is a long waiting list to get in and the yearly fee of $15,000 is too expensive for them.

The respondents own their house in Texas, which they bought in 1992. However, because it has not appreciated in value, they would not make any money from the sale of this house. The female respondent stated that if they were to return to Taiwan, they would have to pay about $800 for a one-bedroom apartment, whereas in the United States their house has four bedrooms. The female respondent was an interpreter in Taiwan before leaving that country, but she has been a housewife in the United States ever since the birth of their first child. The respondents have never been on welfare and they paid for the delivery of all of their children.

The female respondent has been involved in her local church, the Dallas Chinese Fellowship Church, since her arrival in 1984. She was also baptized in her church in 1985. Through the years, the female respondent has participated in the children's ministry, preparing teenagers to serve God and teaching the Bible at the Sunday school. She has also been active in other church events, such as volunteering at Thanksgiving to cook for the homeless.

The female respondent estimates that she has 20 good friends, and she feels that it would be a hardship on her if she were to lose contact with her circle of friends. She stated that it would be difficult for her to participate in fellowship groups in Taiwan because most people in Taiwan are Buddhist.

The female respondent graduated from college in Taiwan with a business administration degree. Both of her parents continue to live in Taiwan, in her older brother's apartment. She has two brothers and two sisters in Taiwan. Although two of her siblings have homes in Taiwan, they both continue to pay a mortgage.

The female respondent stated that if she were to return to Taiwan, she could not get a job because she has to take care of her children at home. She would not be able to live with her relatives, who already have small accommodations for themselves. Instead, the respondents and their children would likely have to live in a one-bedroom apartment.

## B. Male Respondent's Testimony

The male respondent testified that he first arrived in the United States on May 13, 1982, on a student visa, to pursue a master's degree at the University of Dallas, in Texas. In 1984, he returned to Taiwan to marry his wife and then returned with her to the United States. The respondent worked consistently as a deliveryman from 1985 until 1990. In September 1990, the respondent

purchased a video store with the proceeds that his parents received from the sale of their farmland in Taiwan. The respondent sold the store after 13 months and used that money to buy his home. In October 1991, the male respondent went back to work as a deliveryman. He works 7 days a week and attends church on Sundays.

The male respondent has a salary of $19,000 per year, and he pays $900 per month toward the mortgage on the house. The respondents own two cars: one he uses for his deliveries, and the other she uses to drive the children. The respondents have insurance on their cars, and they have never received any traffic tickets.

The male respondent testified that he graduated from college with a degree in business administration. He stated that he wrote about 13 letters to Taiwan businesses inquiring about employment prospects if he had to return, but he did not receive any replies. His family has told him that he would not be able to get a good job. The respondent estimates that he would make $800 per month working in Taiwan. He claims the cost of living is higher in Taiwan than it is in the United States, and that he would be at a disadvantage because companies prefer to hire younger workers.

The male respondent's parents live in Taiwan in a house that belongs to his brother. He has three sisters in Taiwan, but there is no evidence that any of them owns a house.

## II.  IMMIGRATION JUDGE'S DECISION

The Immigration Judge found that the respondents met the statutory requirements of 7 years of continuous physical presence and good moral character. However, the Immigration Judge denied the respondents' application for suspension of deportation, finding that they failed to establish that their deportation would result in extreme hardship to themselves or to their United States citizen children. The Immigration Judge granted the respondents relief in the form of voluntary departure. The respondents have appealed from this decision, arguing that their deportation would result in extreme hardship to themselves and their United States citizen children.

## III.  RESPONDENTS' APPLICATION FOR SUSPENSION OF DEPORTATION

The only issue before us is whether the respondents have established that their deportation would result in extreme hardship to themselves or their United States citizen children, such that they should be granted suspension of deportation under former section 244(a) of the Act. In making a determination of extreme hardship, we consider the age of the respondents, both at entry and at the time of their application for relief; their family ties in the United States

and abroad; their length of residence in the United States over the minimum requirement; their own health, as well as that of their United States citizen children; political and economic conditions in Taiwan; the financial impact of departure from the United States; the possibility of other means of adjusting their status in the United States; their involvement and position in their local community; and their immigration history. *Matter of Anderson*, 16 I&N Dec. 596 (BIA 1978); 8 C.F.R. § 240.58(b) (2001).[3]

## A. Hardship to Respondents

We note that, except for a brief trip to Taiwan, the male respondent has lived in the United States for approximately 19 years and the female respondent for almost 17 years, well over the 7-year requirement for suspension of deportation. Furthermore, during this time, the respondents have been very involved in their community and have obeyed the laws of the United States.[4] In addition, there is evidence that they have paid their taxes, and they have raised five citizen children in this country. Although the male respondent would be able to find a job in Taiwan doing deliveries, which is somewhat similar to his present job in the United States, he testified that his salary would decrease considerably and his expenses for housing and education for his children would dramatically increase. The respondents do not have any other means of adjusting their status unless they wait 6 years for their oldest daughter to turn 21 and file a visa petition on their behalf.

The respondents were adults when they traveled to the United States on student visas and have therefore lived most of their lives in Taiwan. They are relatively young and in good health, and they should not experience significant difficulties in returning to their homeland. The respondents should not encounter any major problems in relocating as a result of the political and economic conditions in Taiwan.

Regrettably, the respondents' attorney failed to present witness testimony and documentary evidence to corroborate the respondents' involvement in their community and the hardship they would suffer if forced to separate from their friends. Nevertheless, there is no evidence in the record that contradicts the

---

[3] The standard for "extreme hardship" that we apply in the present case is the same as that applied in cases dealing with petitions for immigrant status under section 204(a)(1) of the Act, 8 U.S.C. § 1154(a)(1) (1994 & Supp. V 1999), as amended by section 40701 of the Violence Against Women Act of 1994, Pub. L. No. 103-322, 108 Stat. 1941 (codified at 42 U.S.C. § 13981), as well as in cases involving waivers of inadmissibility under section 212(i) of the Act, 8 U.S.C. § 1182(i) (Supp. V 1999).

[4] Aside from a minor incident involving the male respondent and a copyright violation of videotapes when he owned the video store, the respondents have never had any criminal problems, nor have they been arrested. The Immigration Judge found that the respondents had established good moral character.

respondents' testimony that they are committed to their community, that they own their own home, and that their family would experience significant difficulties in Taiwan. We do not need to decide, however, whether these respondents have established sufficient hardship to themselves to warrant a grant of suspension of deportation, without consideration of the hardship to their United States citizen children. *See Matter of Anderson*, *supra*; 8 C.F.R. § 240.58(b).

## B.  Hardship to Respondents' United States Citizen Children

The respondents can establish their eligibility for suspension of deportation if they demonstrate that their deportation would result in extreme hardship to their United States citizen children. Extreme hardship to an applicant's children is an important factor that must receive close attention in evaluating a suspension claim. *Casem v. INS*, 8 F.3d 700 (9th Cir. 1993). It is clear from the record that the respondents' concern for their children's welfare and the hardship they would endure is greater than their concern for themselves. The children range in age from 6 to 15 years old and the female respondent's principal concern is for their education, because the children are not fluent in Chinese. Although she speaks to the children both in English and in Chinese, they respond to her only in English. The three older children have been enrolled in Chinese language classes for several years, but these classes are not regular and are held only on Sundays, in sessions lasting 1½ hours per week.

We find that the Immigration Judge erred in speculating that the children would become fluent in Chinese within a "very short period of time." There is no evidence that they have even a basic command of the Chinese language. As mentioned, it is unfortunate that the respondents' children did not testify at the hearing, but we find nothing in the record to indicate that their language capabilities, especially those of the oldest daughter, Claire, are sufficient for an adequate transition to daily life in Taiwan. These children have lived their entire lives in the United States and are completely integrated into their American lifestyles. Their needs for housing, food, clothing, education, and community support have been adequately met.  We are satisfied that to uproot the oldest daughter, Claire, at this stage in her education and her social development and to require her to survive in a Chinese-only environment would be a significant disruption that would constitute extreme hardship.[5]  Consequently, it is unnecessary to determine whether the other citizen children would also suffer extreme hardship.

---

[5]  Contrary to the characterization of our decision presented in the dissenting opinion of Board Member Jones, we assert nothing about the quality of the educational system in Taiwan. What we do find is that the children would be disadvantaged in Taiwan because they do not speak, read, or understand the language used in the only educational system that would be available to them.

The facts in the present case are distinguishable from those set forth in *Matter of Pilch*, 21 I&N Dec. 627 (BIA 1996). In *Pilch*, the aliens were a husband and wife, natives and citizens of Poland, who had been living in the United States for 11 years. They had three United States citizen children, all of whom were under the age of 6. The aliens admitted that their children spoke Polish and that they were learning English in school. Their oldest son was living in Poland with his grandmother. We determined that the respondents had failed to establish that their deportation would result in extreme hardship to themselves or their United States citizen children. *Id.*

In contrast, the respondents in this case have been living in the United States for 19 years and 17 years, respectively, a significantly longer period of physical presence than either of the aliens in *Matter of Pilch*, *supra*. The respondents also had five citizen children at the time of their hearing before the Immigration Judge. We note in particular that the oldest child is now 15 years old and the youngest is 6 years old. All five children have spent their formative years in the United States and have succeeded in their studies in the American school system. Having lived in the United States all of their lives, these children have clearly been integrated into the American lifestyle. The children's primary language is English and they are not sufficiently fluent in the Chinese language to succeed in Taiwan. We conclude that the oldest daughter, Claire, who is of high school age, would suffer extreme hardship if her parents were deported from the United States to Taiwan. Having reached this conclusion, we do not find it necessary to address whether the respondents' deportation would constitute extreme hardship to the younger children, and we save that inquiry for another day.

## IV.  CONCLUSION

Having found that the respondents' oldest child would suffer extreme hardship if the respondents were to return to Taiwan, we conclude that the respondents have met the statutory requirement of establishing that their deportation from the United States would result in extreme hardship to themselves or their United States citizen children. *See Matter of Pilch*, *supra*; *Matter of Anderson*, *supra*.

We discern no reason to disturb the Immigration Judge's conclusion that the respondents have established the requisite statutory presence and good moral character in the United States. In addition, we find nothing in the record to indicate that the respondents are undeserving of this form of relief in the exercise of discretion. Inasmuch as the respondents have met all of the requirements for suspension of deportation, we will grant their application under section 244(a) of the Act.

Accordingly, the respondents' appeal will be sustained.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The respondents' application for suspension of deportation is granted and deportation is suspended.

*CONCURRING OPINION:* Lori L. Scialabba, Acting Chairman, in which Edward R. Grant, Board Member, joined

I respectfully concur. I agree with the result in this matter, and with nearly all of the majority's analysis. I write separately only to clarify that our precedent decision in this matter does not shift the burden of proof to the Immigration and Naturalization Service on the suspension of deportation claim, as the majority opinion at certain points appears to suggest.

For example, the majority opinion states that "there is no evidence in the record that contradicts the respondents' testimony that they are committed to their community, that they own their own home, and that their family would experience significant difficulties in Taiwan." *Matter of Kao and Lin*, 23 I&N Dec. 45, 49-50 (BIA 2001). This observation is admittedly unnecessary to our result in this matter, as the majority's opinion quickly points out. The observation also incorrectly suggests that in the absence of rebuttal, the respondents have established these points in their favor. But the burden of proof to show extreme hardship is upon the respondents. If they produce no evidence on these points, no rebuttal by the Service is necessary.

The majority makes a similarly troubling observation later in its opinion, concluding that "[t]here is no evidence that [the children] have even a basic command of the Chinese language," or that their language capabilities "are sufficient for an adequate transition to daily life in Taiwan." *Id.* at 50. In the absence of any evidence in this regard, there is no basis for the majority's inference that the children's command of the language is insufficient for adequate readjustment to Taiwan, or that they would suffer hardship as a result. To hold otherwise would shift the burden of proof to the Service. I do not believe that this was the majority's intention. I also agree that the evidence supports a grant of suspension of deportation in this matter, regardless of the language issue.

*DISSENTING OPINION*: Philemina McNeill Jones, Board Member, in which Michael J. Heilman, Lauri Steven Filppu, and Patricia A. Cole, Board Members, joined

I respectfully dissent.

I agree with the determination of the Immigration Judge that the respondents failed to establish that their deportation from the United States would result in extreme hardship to themselves or to any of their United States citizen children. *See* section 244(a) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)

(1994) (repealed 1996); *Matter of Pilch*, 21 I&N Dec. 627 (BIA 1996) (finding that the respondents failed to show extreme hardship over and above the normal economic and social disruptions involved in deportation to themselves or their three United States citizen children); *Matter of Anderson*, 16 I&N Dec. 596 (BIA 1978) (providing factors to be considered in determining extreme hardship). The respondents are college educated and have considerable assets to assist them with readjustment. The respondents' children can also receive a very good education in Taiwan, as discussed below.

I disagree with the majority's presumption that the respondents' children would be forced to return to a less than adequate education system in Taiwan. In a December 2000 publication, the United States Department of Education reported the findings from the Third International Mathematics and Science Study, as compiled by the National Center for Education Statistics. This report, entitled *Pursuing Excellence: Comparisons of International Eighth-Grade Mathematics and Science Achievement from a U.S. Perspective, 1995 and 1999*, disclosed that junior high school students from the Republic of China (Taiwan) were ranked first in science and third in mathematics under the international study. By comparison, American students were ranked 19th in science and 16th in mathematics. In addition, 31% of the Taiwanese students placed among the top 10% of all participants in science, and 41% of the Taiwanese students placed in the top 10% of all participants in mathematics. Only 15% of American students placed in the top 10% in science, and only 9% of American students placed in the top 10% in mathematics.[1]

The three oldest children have been enrolled in regular Chinese language classes on Sundays for several years. These classes are held in sessions lasting 1½ hours each. The children should have attained a level of fluency in their Chinese language reading and writing abilities to allow them to adjust to the education system in Taiwan without major problems. In addition, based on the level of the educational system in Taiwan as reported in the international study, there is no reason why the children's education in general would suffer.

Although it may be difficult for the children to grow accustomed to their new life in Taiwan, the children are all of a relatively young age and can adapt and succeed in the new environment with the aid of their parents and extended families. A consideration of all the evidence in the record leads me to conclude that the difficulty the children would experience upon moving to Taiwan is not over and above the normal economic and social disruptions involved in deportation and would not amount to extreme hardship. Consequently, I would

---

[1] These figures are taken from the Statistical Analysis Report, which is located at the online website for the National Center for Education Statistics at <www.nces.ed.gov/pubs2001/2001028.pdf>. Given that this study was compiled under the auspices of the United States Department of Education, I find that it holds a significant amount of weight and credibility.

not find that any of the respondents' children would suffer extreme hardship if they were forced to move to Taiwan.

With respect to the economic opportunities available to the respondents, the male respondent has a continuous employment history in the United States as a deliveryman, but the female respondent has never worked in the United States. Both respondents have business degrees from college and understand the English language. The male respondent testified that although he would have difficulty finding a job in Taiwan, he would probably be able to work as a deliveryman. The female respondent would not work because she takes care of the children at home.

The respondents did not provide any information on the employment situation in Taiwan. However, the Department of State's *Country Reports on Human Rights Practices for 2000, available in* <http://www.state.gov/g/drl/rls/hrrp/2000/eap>, indicates that "[a]s the economy [in Taiwan] evolved, services and capital- and technology-intensive industries have become the most important sectors. . . . Citizens generally enjoy a high standard of living and an equitable income distribution." The Department of State further reports that the Council of Labor Affairs

> did not increase the minimum monthly wage, which remained at $505 (nt$15,840). While sufficient in less expensive areas, this wage does not assure a decent standard of living for a worker and family in urban areas such as Taipei. However, the average manufacturing wage is more than double the legal minimum wage, and the average for service industry employees is even higher.

*Id.* Given these statistics, I would find that the male respondent, who has extensive experience in the service industry and has a working knowledge of English, clearly has the potential to earn enough money to support his family if he were removed to Taiwan.

The record reflects that the male respondent's parents sold their only piece of farmland in Taiwan to help the respondents financially in the United States. The male respondent used the $68,000 that he received from his parents to buy a video store in 1990. The male respondent indicated that he was expected to pay this money back to his parents. In 1991, the respondents sold the video store and used the money to buy a house for the family. The house was worth $150,000, and he was able to make a deposit of $50,000 to purchase the home.

The respondents also own two cars, and they have approximately $10,000 in cash, stocks, and bonds. The respondents' assets can be sold and used in order to help them begin their lives anew in Taiwan. Their knowledge of the English language is also sufficient to be helpful in their search for employment overseas. In addition, the respondents are university graduates and have the support of their extended families in Taiwan.

Both respondents belong to the Dallas Chinese Fellowship, and the female respondent has been teaching Sunday Bible school. The female respondent

testified that she has many good friends in the church, but there is no evidence in the record as to the impact that would result to the church if the respondents were deported.  Based on the testimony and evidence in the record, I would find that the respondents have failed to establish that they would suffer extreme hardship if they were deported to Taiwan.  *See Matter of Pilch*, *supra*; *Matter of Anderson*, *supra*.  Consequently, I would find that the respondents have failed to meet the requirements for suspension of deportation under former section 244(a) of the Act.

Accordingly, I would dismiss the appeal.