**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3982
_____

OSCAR ROBERTO CORDOVA-MELGAR,
                                        Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A024-308-195)
Immigration Judge: Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 11, 2011

Before: RENDELL, CHAGARES and ALDISERT, Circuit Judges

(Opinion filed October 12, 2011)
_____

OPINION
_____

PER CURIAM

    Oscar Roberto Cordova-Melgar ("Cordova") petitions for review of the Board of

Immigration Appeals' final order of removal. For the reasons that follow, we will deny

the petition for review in part and dismiss it in part for lack of subject matter jurisdiction.

Cordova, a native and citizen of Guatamala, was issued an Order to Show Cause on January 30, 1990, alleging that he entered the United States without inspection on January 5, 1985. The former Immigration and Naturalization Service charged that he was deportable under former section 241(a)(1)(B) of the Immigration & Nationality Act ("INA"), 8 U.S.C. § 1251(a)(1)(B) (1994). Cordova failed to appear and was ordered deported *in absentia*. In 2007, proceedings were reopened at Cordova's request. In 2008, he appeared before an Immigration Judge and conceded deportability. He also filed a Form I-881, Application for Suspension of Deportation or Special Rule Cancellation of Removal under Section 203 of the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-100 § 203, 111 Stat. 2160, 2196-2200 (November 19, 1997), and a Form EOIR-40, Application for Suspension of Deportation, under former section 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1) (1994).

During his individual merits hearing, Cordova testified that he registered for the benefits of the class action settlement in American Baptist Churches v. Thornburgh, 760 F. Supp. 796 (N.D. Cal. 1991), with the assistance of an immigration attorney, Maria Valez. A.R. 86. When questioned specifically about his "ABC benefits" registration, however, he could not remember when he applied, see id., whether forms were actually submitted, or if he had paid any fees. See id. at 102-103. Regarding his family, Cordova testified that one of his daughters lives in the United States, but his wife, father and other children all live in Guatemala. Cordova testified that he has paid taxes under one of his two social security numbers, and that he underwent surgery for stomach cancer and may need additional treatment, although he is in remission and not currently taking medication or following a special diet.

In an oral decision dated December 5, 2008, the IJ denied Cordova's applications and ordered him removed to Guatemala. The IJ first noted that, for Guatemalan nationals who meet certain requirements, there is a presumption that deportation or removal from the United States would result in extreme hardship. 8 C.F.R. § 1240.64(d)(1). The IJ then determined that Cordova failed to establish the facts necessary to qualify for the presumption of extreme hardship. His asylum application had to have been filed by April 1, 1990, see id. at § 1240.61(a), but it was filed at the earliest on November 4, 1991. In the alternative, he had to have filed his ABC class registration form by December 31, 1991, see id. The IJ examined the documents Cordova submitted to demonstrate his registration: a letter written by the attorney who assisted him, Ms. Valez, with an ABC registration form attached. The IJ could not, however, discern the date on the letter, and the registration form was undated. (It appeared to the IJ that the attorney's letter was dated November, 1992, which would have made the registration untimely.) Moreover, the problems with Cordova's documentation were not corrected by his testimony because he was unable to remember when he registered for ABC benefits, or any of the specifics of his registration. Accordingly, the IJ concluded that Cordova did not establish that he had registered for ABC class benefits before the December 31, 1991. In sum, he could not establish either of the facts necessary to qualify for the presumption of extreme hardship; he would thus have to establish extreme hardship without the benefit of the presumption.

3

The IJ then examined the factors set forth in <u>Matter of Anderson</u>, 16 I&N Dec. 596 (BIA 1978), to determine if Cordova met the extreme hardship requirement.[1] Within this framework, the IJ determined that Cordova's stomach cancer, which had been treated and was in remission, and his family ties in the United States, were insufficient to establish extreme hardship either to himself or a qualifying relative when balanced against the fact that his wife and grown children reside in Guatemala, and he has lived most of his life in Guatemala. The IJ also denied Cordova's applications in the exercise of his overall discretion, in part because Cordova had reaped the benefits of Medicaid without faithfully paying his taxes (for example, he admitted that he claimed his daughter as a dependent on his return even though she did not live with him and did not qualify as a dependent), and because he had two social security numbers. He also had made no showing of service to the community. Cordova filed an appeal with the Board of Immigration Appeals.

On September 8, 2010, the Board dismissed the appeal. The Board reasoned that the IJ's factual findings concerning the dates when Cordova may have filed his asylum application and <u>ABC</u> class benefits registration were not clearly erroneous, 8 C.F.R. § 1003.1(d)(3). Specifically, the Board agreed that the date on Cordova's attorney's <u>ABC</u> class registration letter was indiscernible. The Board noted that it appeared to have been prepared sometime in November, but the exact date in November and year were indiscernible. Furthermore, Cordova had testified that he did not know that the <u>ABC</u> registration form had ever actually been submitted. Accordingly, the Board agreed with

---

[1] The IJ also looked at whether Cordova established the continuous physical presence requirement and concluded that sufficient documentation was presented to establish that he was continuously present in the United States for seven years.

4

the IJ that Cordova was not entitled to the presumption of extreme hardship because he could not establish that he had complied with either of the critical deadlines for Guatemalan nationals. With respect to the IJ's determination on the merits of the extreme hardship issue, the Board rejected Cordova's argument that the IJ failed to adequately take his cancer into consideration. The Board held that the IJ properly considered the relevant factors of age, family circumstances, length of residence in the United States, health, involvement in the community, and immigration history, as required by Matter of Anderson, 16 I. & N. Dec. 596, and Matter of Pilch, 21 I. & N. Dec. 627 (BIA 1996).[2]

Cordova timely petitioned for review and sought a stay of removal, which the Government did not oppose. We granted Cordova a stay of removal. Cordova then filed his Informal Brief, in which he argued that the IJ gave little or no weight to his cancer treatment evidence, failed to consider the hardship factors cumulatively, and thus committed an abuse of discretion. In ¶ 7 of the brief, Cordova alleged without elaboration that the Board and IJ erred in not giving him the presumption of hardship. The Government then filed a motion to dismiss the petition for review, contending that we lacked jurisdiction over the agency's discretionary determination of extreme hardship, see Mendez-Moranchel v. Ashcroft, 338 F.3d 176, 179 (3d Cir. 2003) (noting that every other circuit to have considered the question has concluded that the extreme hardship determination under former INA § 244 is a discretionary one). This motion was referred by Order of the Court to a merits panel. In the Order, we directed the parties to address

---

[2] Given the determination of no extreme hardship, the Board did not reach the IJ's alternative decision that, as a matter of discretion, Cordova was not entitled to suspension of deportation.

in their briefs whether the Board's determination that Cordova did not qualify for the presumption of extreme hardship was non-discretionary and thus reviewable, see Bernal-Vallejo v. Immigration & Naturalization Serv., 195 F.3d 56, 63 (1st Cir. 1999). Our Clerk then issued an order inviting Cordova to file a supplemental brief on the jurisdictional issue. The Government has filed its responsive brief. The petition for review is now ripe for decision.

We will deny the petition for review in part and dismiss it in part for lack of subject matter jurisdiction. We generally have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a), (b)(1). We generally review the Board's decision, although we also review the IJ's decision to the extent the Board adopted or deferred to it. See Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005).

Prior to the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), an alien who was subject to deportation could qualify for suspension of deportation, and then adjustment of status, if he could demonstrate that: (1) he had been physically present in the United States for a continuous period of seven years, (2) he had been a person of good moral character, and (3) his deportation would result in extreme hardship to himself or an immediate family member who was a United States citizen or a lawful permanent resident. INA § 244(a); 8 U.S.C. § 1254(a) (repealed). After section 244 was repealed and replaced by cancellation of removal, see generally 8 U.S.C. § 1229b(b)(1), Congress enacted NACARA, which made certain favorable changes to IIRIRA for Guatemalan nationals (among others) whose immigration proceedings commenced prior to IIRIRA's effective date. See NACARA § 203(a)(1), 111 Stat. at 2196-2200.

6

For Guatemalan nationals, eligibility for relief under NACARA can be established by either (1) filing an application for asylum on or before April 1, 1990; or (2) first entering the United States on or before October 1, 1990, and registering for benefits under the settlement agreement in American Baptist Churches, 760 F. Supp. 796, on or before December 31, 1991. See 8 C.F.R. §§ 1240.60, 1240.61(a)(1)-(2). See also §§ 1240.65(b)(1)-(3), 1240.66(b)(2)-(4) (2011). For those who meet specified criteria and have submitted the appropriate application, there is a presumption that deportation or removal from the United States would result in extreme hardship, thus fulfilling the extreme hardship requirement for suspension of deportation, see id. at § 1240.64(d)(2). The burden is on the applicant to establish by a preponderance of the evidence that he is eligible for suspension of deportation or special rule cancellation of removal. See id. at § 1240.64(a)(1).

The Government, in its responsive brief, see Respondent's Brief, at 16, has agreed with us that the agency's "no presumption of extreme hardship" determination, a central issue in Cordova's case, is indeed reviewable because it is factual and non-discretionary. Cf. Bernal-Vallejo, 195 F.3d 56, 62-63 (while the extreme hardship requirement is discretionary and non-reviewable, the continuous physical presence question is factual and non-discretionary and thus reviewable). The presumption of extreme hardship determination may be reached by answering either one of two factual questions: first, is the individual a registered ABC class member as of December 31, 1991, or second, did he file an application for asylum on or before April 1, 1990. 8 C.F.R. § 1240.61(a)(1)-(2). There is no exercise of discretion in answering these factual questions. Accordingly,

7

the Government's motion to dismiss for lack of subject matter jurisdiction is denied as presented, and we will review the merits of this factual and non-discretionary question.

The scope of review of the agency's determination of facts is narrow. The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C.§ 1252(b)(4)(B). See also Jarbough v. Att'y Gen. of U.S., 483 F.3d 184, 191 (3d Cir. 2007) ("[W]e are not triers of fact, and Congress mandates that we leave the agency's factfinding undisturbed unless the evidence *compels* a contrary conclusion."). With respect to the presumption of extreme hardship, Cordova must show that the evidence relating to the necessary facts was "so compelling that no reasonable factfinder could fail to find" in his favor. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

Here, the agency determined that Cordova failed to establish that he filed an asylum application on or before April 1, 1990 or that he registered for ABC benefits before December 31, 1991. The agency determined that his documentary evidence and testimony were insufficient to meet his burden of proof. Insofar as his asylum application is dated November 4, 1991, clearly no reasonable factfinder would be compelled to conclude that it was filed before the April 1, 1990 deadline. The question of whether Cordova timely registered for ABC benefits is closer, but, on this record, we must defer to the agency's factfinding. The date on the letter written by the attorney who assisted Cordova, A.R. 176, is, as the Board concluded, indiscernible, and the attached ABC registration, see id. at 177, is, indeed, undated. Moreover, the problems with Cordova's documentation were not, as the agency determined, corrected by his testimony. Although he testified that he registered for ABC benefits with the assistance

8

of Ms. Valez, see id. at 86, when questioned about the details, he could not remember when he applied, see id., or whether forms actually were submitted on his behalf, see id. at 102-103. We note that Cordova's attorney before the Board argued in his brief on appeal that the date on the letter written by Ms. Valez is "November 1991," id. at 8, and we acknowledge that, because the asylum application was dated November 4, 1991, it is logical to assume that the ABC registration form was prepared in the same month, but we are not the triers of fact here, and this circumstantial evidence does not *compel* a conclusion that Cordova filed his ABC class registration form by December 31, 1991. Accordingly, we uphold the agency's determination that Cordova was not entitled to the presumption of extreme hardship.

Without the presumption, Cordova was required to show extreme hardship to himself or a qualifying relative. This is a discretionary determination. Mendez-Moranchel, 338 F.3d at 179. IIRIRA's transitional rules, which apply here, provide that "there shall be no appeal of any discretionary decision under" section 244 of the INA as of the date of the enactment of the Act. IIRIRA § 309(c)(4)(E). Accordingly, we lack jurisdiction to review Cordova's challenge to the discretionary determination that he failed to establish extreme hardship under former section 244. See, e.g., Najjar v. Ashcroft, 257 F.3d 1262, 1297-98 (11th Cir. 2001); Rodriguez v. Ashcroft, 253 F.3d 797, 799 (5th Cir. 2001); Escalera v. Immigration & Naturalization Serv., 222 F.3d 753, 755 (10th Cir. 2000); Bernal-Vallejo., 195 F.3d at 63.

For the foregoing reasons, we will deny the petition for review in part, and dismiss it in part for lack of subject matter jurisdiction.